IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| PATRICIO ESTRADA, §<br>Institutional ID No. P00095638, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>DIRECTOR, TDCJ-CID, *et al.*, §<br>§<br>Defendants. § | CIVIL ACTION NO. 5:20-CV-030-BQ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Patricio Estrada filed this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at the Price Daniel Unit (Daniel Unit) of the Texas Department of Criminal Justice (TDCJ). Estrada seeks monetary damages as well as declaratory and injunctive relief for his alleged injuries. Compl. 11, ECF No. 1.[1]

Estrada filed his Complaint on February 4, 2020 (ECF No. 1), and on May 27, 2020, the United States District Judge transferred this case to the undersigned United States Magistrate Judge. ECF No. 13. The undersigned thereafter reviewed Estrada's Complaint and "Memorandum of Laws," as well as authenticated records provided by TDCJ, and ordered Estrada to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF No. 19. Estrada timely completed and returned the questionnaire. ECF No. 20.

---

[1] Page citations to Estrada's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A. Estrada's Claims

Estrada asserts claims against the following Defendants: (1) Brian Collier, TDCJ Director; (2) Warden Castillo; (3) Major Durben; (4) Nurse Practitioner Davis; (5) Psychologist Carpenter; (6) Medical Coordinator Cogburn; (7) Sergeant Thompson; (8) Sergeant Perez; (9) Sergeant Tapscott; (10) Sergeant Calloway; (11) Correctional Officer (CO) Bundy; and (12) Classification Coordinator Williams.[2] Compl. 1. In his questionnaire responses, Estrada also names "Officer Martinez," "Officer Brown," Lieutenant Moore, and Jane Doe as Defendants. Questionnaire 9, 11, ECF No. 20. Estrada sues all Defendants in their individual and official capacities. Compl. 3.

Estrada contends that on October 3, 2019, Defendant Davis denied Estrada's requests for a pelvic brace, medical shoes, and housing on the first floor of the unit. *Id.* at 4–5. Estrada claims such provisions were necessary due to injuries resulting from a 2012 accident. *Id.* at 4; Questionnaire 4. Estrada acknowledges that Defendant Davis examined him on October 3 and referred him for an x-ray of his foot but nevertheless believes Davis should have prescribed the brace and shoes. Compl. 5. Estrada avers that Defendant Davis's actions violated his Eighth

---

[2] Estrada alleges that Defendants numbers 2 through 12 all work at the Daniel Unit. Compl. 1.

3

Amendment rights as well as the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Mem. of Laws 7–8, ECF No. 2; Questionnaire 21.

Estrada similarly claims that Defendants Durben and Williams violated the Eighth Amendment by refusing to house him in a first-floor cell, despite Estrada's medical conditions. Questionnaire 7; *see* Compl. 6. Estrada also alleges that Defendants Durben, Williams, and Carpenter violated the Constitution by not placing him in protective custody after he reported fearing for his safety.[3] Compl. 9; Questionnaire 2–3, 7–8. Estrada states that he needed placement in protective custody because other inmates had made threats based on the reason for his incarceration, i.e., "a sexual offense." Compl. 8–9; Questionnaire 7–8. Estrada contends that Defendant Carpenter's inaction in this regard also violated the ADA and RA. Questionnaire 22.

Moreover, Estrada asserts that on October 15, 2019, Defendant Bundy directed him "to climb on the toilet and take a blanket down that [his] cellmate had hanging over the light," in violation of his medical restrictions (Compl. 6), thus causing him "discomfort in [his] back and leg." Questionnaire 8. Estrada claims he wrote a grievance against Defendant Bundy related to the incident, and Bundy subsequently retaliated against him. Compl. 9; Questionnaire 16.

Estrada also avers that on October 16, 2019, Defendant Martinez "accidently" threw away property he "left at the Daniels [sic] Unit when [he] went on Benchwarrant [sic]." Compl. 6; *see* Questionnaire 9. According to Estrada, the disposal of his property violated his due process rights. Questionnaire 10.

In addition, Estrada claims that on October 23, 2019, his cell flooded, "causing toilet water and feces to go everywhere, including on [his] clothes." Compl. 6. Estrada alleges that Defendants

---

[3] Estrada asserts that Defendants Durben, Williams, and Carpenter's actions constituted deliberate indifference to a serious medical need. Questionnaire 7–8. As pleaded, however, Estrada's claims are properly construed as failure to protect.

Brown and Doe required him to pick up his property using rags as gloves and, "[a]s [he] was picking up the clothes, feces began soaking through the rags getting all over [his] hands." *Id.* This exposure, Estrada contends, "put [him] at risk of future long term injury[,] . . . caused psychological trama [sic]," "made [him] nauseated," and triggered a migraine headache.   Questionnaire 11. Estrada concedes, however, that he was able to wash his hands approximately one and a half hours following the exposure—he and his cell mate took "over a[n] hour to clean up" the sewage, using "only a mop, mop bucket, and rags," and they then waited "another 15-20 minutes for the plumber to finish working in the cell before [they] could wash off." *Id.* at 11–12. Estrada asserts that the cleaning caused him "pain in [his] back and leg." *Id.*

The day following the sewage incident, i.e., October 24, Estrada states that Defendant Calloway required him to empty his laundry bag (which contained clothes with feces on them) and, when he refused to empty the bag, Defendant Calloway retaliated by directing another officer to "lock [him] up [for two hours] for refusing a direct order." Compl. 6–7. Estrada alleges Defendant Calloway's actions violated his Eighth Amendment rights as well as his due process and equal protection rights. Questionnaire 12.

Estrada also raises claims related to two separate cell-searches. First, Estrada alleges that Defendants Calloway and Brown conducted an "illegal" cell search "in retaliation for refusing to touch" clothes with feces on them. Mem. of Laws 7; *see* Compl. 7; Questionnaire 14. Estrada further asserts that while Defendant Perez searched his cell on November 21, 2019, Perez made Estrada go outside for two hours in a t-shirt, pants, and shower slides—without a jacket—in 47 degree rainy weather. Compl. 7; Questionnaire 13. Estrada claims the two-hour exposure caused him "pain and discomfort" as well as migraines for two days. Questionnaire 13.

With respect to Defendants Tapscott and Thompson, Estrada alleges that they threatened to use excessive force against him and, on several occasions, used force against other inmates. Compl. 8–9; Questionnaire 1.   Finally, Estrada raises supervisory liability claims against Defendants Castillo and Collier. Questionnaire 17–19. Estrada similarly alleges that Defendant Cogburn failed to investigate his grievances and did not "properly supervise[] the medical staff at Daniel's [sic] Unit." *Id.* at 20.

**B. Estrada has not stated a viable constitutional claim based on Defendant Davis's purported denial of medical equipment and Defendant Durben's alleged failure to reassign Estrada's housing; however, Estrada's claims against Defendant Davis and Williams regarding his housing assignment as well as Defendant Bundy's order to climb in violation of his medical restrictions survive screening.**

Estrada raises several deliberate indifference claims related to the purported denial of constitutionally adequate medical care. Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013).   An inmate seeking to establish a Eighth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs"). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks omitted)), and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410.   An inmate must first prove objective exposure to a substantial risk of serious bodily harm.   *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component,  a prison official acts with deliberate indifference only where he (1) knows

6

the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that prison official is not responsible for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

A prison official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a

7

viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

> *1. Estrada has not pleaded facts demonstrating that Defendant Davis violated the Constitution by denying him medical shoes and a pelvic brace.*

Estrada's Eighth Amendment claim against Defendant Davis is based on the allegation that she denied his request for a pelvic brace, medical shoes, and first-floor housing.[4]  Compl. 5. In Estrada's view, his medical conditions warranted medical shoes and a pelvic brace, and Defendant Davis's failure to provide them constituted deliberate indifference. *See id.*; Mem. of Laws 5–6; Questionnaire 4. Estrada has not pleaded facts sufficient to raise a cognizable claim against Defendant Davis based on the denial of medical equipment.

Estrada claims his medical conditions required a pelvic brace and medical shoes. *See* Compl. 5; Questionnaire 4. Estrada concedes, however, that after examining his left foot ("I showed her the bruise the shoes [were] causing"), Defendant Davis determined that the medical shoes Estrada requested were not necessary. Questionnaire 4–5; *see* Compl. 5 ("After looking at my foot and acknowledging the bruise on the bottom, defendant Davis went on to state . . . the criteria for medically issued shoes . . . ."). The authenticated records show that, based on her observations, Defendant Davis concluded there was "no indication for medical shoes" but she prescribed ibuprofen.[5]  While Estrada may have desired medical shoes, his disagreement with Defendant Davis's medical decision not to prescribe the shoes fails to state a viable constitutional claim. *Norton*, 122 F.3d at 292; *Gobert*, 463 F.3d at 346; *see, e.g.*, *Wilson v. McGinnis*, 651 F.

---

[4] The claim based on Defendant Davis's purported denial of first-floor housing is addressed separately. *See infra* Section II.B.2.

[5] In his questionnaire responses, Estrada disputes that Defendant Davis "examined" his knee or ankle, and alleges that another doctor prescribed the ibuprofen. Questionnaire 5. But in the Memorandum of Laws, Estrada avers that Defendant Davis "refuse[d] to provide medication for pain *other than IB profien* [sic] . . . ." Mem. of Laws 8 (emphasis added). Thus, Estrada's pleadings are inconsistent regarding the provision of ibuprofen. Regardless, the Court concludes that Estrada possessed a prescription for ibuprofen at the time of, or shortly after, the October 3, 2019, visit.

App'x 263, 264 (5th Cir. 2016) ("[Prisoner's] argument that [defendant] was deliberately indifferent because she did not order a permanent bottom bunk restriction is unavailing, because it represents a mere disagreement with [defendant's] methods to treat his medical problem."); *Sulak v. Beck*, Civil Action H-18-0630, 2018 WL 6173723, at *3 (S.D. Tex. Nov. 26, 2018) (noting that prisoner's claim that "medical personnel failed to prescribe medical shoes or black work boots" constituted a disagreement with medical care).    At best, Estrada's claim may amount to one for negligence, which does not rise to the level of a constitutional violation. *See, e.g.*, *Johnson v. Talley*, 243 F. App'x 10, 11 (5th Cir. 2007) (explaining prisoner's contention that defendant "failed to provide him with a knee brace, cane, or walking stick . . . alleges, at most, a difference in opinion or a malpractice claim concerning [prisoner's] medical treatment and thus does not establish an Eighth Amendment violation"); *Holland v. Patel*, 236 F. App'x 136, 137 (5th Cir. 2007) ("[Prisoner's] assertion that he required a cane and that [defendant] wrongfully took his away amounts to no more than a mere disagreement with the medical treatment he received or, at most, a claim for negligence and was thus properly dismissed.").

Similarly, Estrada's claim that Defendant Davis failed to prescribe a pelvic brace does not demonstrate deliberate indifference.    Estrada's allegations concerning the pelvic brace are best summarized as follows:  (1) Defendant Davis saw Estrada on October 3 but, according to Estrada, she did not properly examine him; and (2) Defendant Davis should have given Estrada a pelvic brace because a TDCJ doctor had issued one in the past.    Compl. 4–5; Mem. of Laws 8; Questionnaire 5.  The authenticated records reflect that during the October 3 visit, Defendant Davis observed Estrada was able to "get[] on and off exam table easily, [had a] normal gait, no deformity [in his] knee or ankle, [and his] left foot [had a] . . . low arch and small bunion."  Estrada denies that Defendant Davis had him climb on the exam table or that she examined his knee and ankle.

Questionnaire 5. He does not dispute, however, that he exhibited a normal gait on October 3. *See id.* Moreover, the Court specifically asked Estrada to "describe *all* facts, including dates and relevant actions, forming the basis of [his] deliberate indifference claim against **Defendant Davis**." *Id.* at 6 (emphasis added). In response, Estrada did not reference the pelvic brace or provide any facts supporting his allegation that Defendant Davis's failure to prescribe the pelvic brace amounted to deliberate indifference, as opposed to a mere disagreement in care. Considering Estrada's pleadings as whole, his allegation that Defendant Davis should have issued him a pelvic brace, without more, amounts to a disagreement in medical care which, as discussed above, is not actionable under § 1983. *See, e.g., Johnson*, 243 F. App'x at 11; *Holland*, 236 F. App'x at 137; *see also Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (finding as inconsistent prisoner's allegation that defendants escorted him to the medical department but claimed the "same defendants denied him access to medical treatment").

Because Estrada has not pleaded facts demonstrating Defendant Davis acted with deliberate indifference in failing to prescribe medical shoes or a pelvic brace, Estrada's claim should be dismissed.

> 2. *Estrada has pleaded sufficient facts to state a claim for deliberate indifference to his serious medical needs based on Defendants Davis and Williams's purported failure to move Estrada to a cell in compliance with his medical restrictions, but his claim against Defendant Durben alleging the same should be dismissed.*

Estrada contends that due to his medical conditions, a doctor at the TDCJ Estelle Unit imposed several medical restrictions, including: no climbing; no walking on wet or uneven surfaces; no walking greater than 100 yards; limited standing; and sedentary work only. *See* Compl. 4; Mem. of Laws 13; Questionnaire 5. According to Estrada, however, while at the Daniel Unit he was not housed in a cell that complied with the foregoing restrictions. *See* Compl. 5 (claiming that officials "housed [him] in cell K-220B, which is located on the second floor, and

10

the furthest from the stairs in Bld. #4, (In violation of [his] medical restrictions)"). Estrada alleges that he spoke with Defendants Davis, Durben, and Williams on separate occasions regarding his housing assignment, but they all refused to move him. Specifically, Estrada asserts that on October 3 and November 5, 2019, he "mentioned to Davis [his] medical restrictions and safety issues of being housed on the 2nd floor; her response was 'On this unit those restrictions are based for inmates that work, you dont [sic] work so housing restrictions dont [sic] count for you.'"[6] Questionnaire 6; *see* Compl. 5 (alleging that Defendant Davis "refused to change [his] housing to a first floor cell, stating 'on this unit, medical restrictions are for work related only, not housing, if you don't work, you should not be complaining, it could be worse'"). Estrada claims that Defendant Davis "was aware of the pain the climbing the stairs was causing," but she "ignored it," resulting in "consistent throbbing in [his] lower back, and throughout [his] leg after climbing the stairs, and [the] long walk to and from chow." Questionnaire 4.

Estrada further avers that on December 1 and 19, 2019, he spoke with Defendant Durben and "mentioned [his] disabilities, and need's [sic] for a first floor cell." *Id.* at 7. According to Estrada, Defendant Durben responded by stating "your housing and medical conditions is [sic] not my concern's [sic], thats [sic] between you and Medical." *Id.* Regarding Defendant Williams, Estrada asserts that "after writing a complaint about [his] housing, and [the Daniel] unit violating [his] medical restrictions, defendant Williams responded by stating I donot [sic] need any bottom floor cell, and there is no evidence of a safety threat." Compl. 6. Estrada also contends that when he spoke with Defendant Durben on December 19, Defendant Williams was also "present when [he] notified both defendants of the risk to [his] safety and life the Unit was placing on [him] by

---

[6] The authenticated records reflect that on November 5, 2019, Defendant Davis explained the x-ray results to Estrada. Defendant Davis noted that Estrada had "multiple [housing] restrictions in place for his [history] of [motor vehicle accident] including bottom bunk and sedentary work." Davis reported that she "question[ed] the need for all of the restrictions but [did] not discontinue at [that] time."

placing [him] on a 2nd floor cell." *Id.* Estrada alleges that Defendant Williams responded by stating "your [sic] in prison, there is no request for special housing." *Id.*

Estrada maintains that Defendant Williams is the "Classification Coordinator, which placed her as the Supervisor over housing assignment, which is based on a[n] inmates [sic] medical restrictions." Questionnaire 7. Estrada claims that Defendant Durben is a "supervising officer of high rank," but he pleads no facts suggesting that Durben possessed the ability to reassign Estrada to a first-floor cell. *Id.*

Based on the facts alleged, Estrada has stated a claim sufficient to survive screening with respect to Defendants Davis's and Williams's alleged refusal to reassign housing in compliance with Estrada's asserted medical restrictions.[7] *See, e.g.*, *Cross v. Dretke*, 241 F. App'x 203, 205–06 (5th Cir. 2007) (holding that whether defendant was aware that prisoner "faced a substantial risk of serious harm if he was housed on the second floor [was] a genuine issue of material fact," where prisoner claimed that defendant violated Eighth Amendment by moving him to the second floor in spite of his medical restrictions); *Delarosa v. Texas*, Civil Action No. 1:08–CV–063–C ECF, 2009 WL 2870061, at *7 (N.D. Tex. Sept. 8, 2009) (Cummings, J.) (ordering defendant to answer based on prisoner's allegation that defendant required him to violate his medical restrictions—including "no bending at the waist, no squatting, and no climbing"—during a strip search, resulting in prisoner injuring his hip).

Conversely, Estrada's assertion that Defendant Durben failed to reassign Estrada to a first-floor cell upon Estrada's request, and that Defendant Durben had the authority to do so merely

---

[7] Estrada frames his claims against Defendants Davis, Durben, and Williams as deliberate indifference to serious medical needs under the Eighth Amendment. Mem. of Laws 5. The Court therefore analyzes them as such. *See Lewis v. Goodwin*, 810 F. App'x 332, 333 (5th Cir. 2020) (explaining that whether prisoner's claim based on denial of handicap-accessible shower and use of a cane or walker was characterized as "inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate[-]indifference standard."

because he is a high-ranking officer, fails to state a claim. Estrada must plead facts demonstrating that Defendant Durben was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" *and* that he drew the inference. *Farmer*, 511 U.S. at 837. By Estrada's own admission, Defendant Durben advised that the medical department—not Durben—was responsible for Estrada's housing restrictions, and Estrada does not allege that he told Durben he had medical restrictions in place. Estrada merely states that he reported to Defendant Durben that he needed a first-floor cell. Questionnaire 7. That is, Estrada pleads no facts indicating that Defendant Durben had any reason to believe that a doctor had imposed medical restrictions that required first-floor housing.

Thus, in the absence of specific factual allegations, the Court cannot plausibly infer that Defendant Durben knew that Estrada's cell assignment was against doctor's orders. *See Petzold v. Rostollan*, 946 F.3d 242, 251 (5th Cir. 2019) (affirming dismissal of deliberate indifference claim where prison official merely "*deferred* to a medical professional's prior treatment . . . when he [knew] an injured prisoner ha[d] recently received medical care"); *Guillory v. La. Dep't of Health & Hosps.*, CIVIL ACTION NO. 16-787-JWD-RLB, 2018 WL 1404277, at *13 (M.D. La. Mar. 20, 2018) ("[The plaintiff] alleges no facts to indicate that [the defendant] actually drew an inference that [the plaintiff] faced a substantial risk of serious harm . . . ."). Without more, Estrada's conclusory allegations that Defendant Durben should have reassigned him based simply on Estrada's request are insufficient to support his claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Shackelford v. State Bar of Tex.*, No. 3:19-CV-1075-M-BN, 2019 WL 4418277, at *3 (N.D. Tex. Aug. 20, 2019) (stating that "while a court must accept all of a plaintiff's

13

allegations as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation'"), *R. & R. adopted by* 2019 WL 4413288 (N.D. Tex. Sept. 16, 2019).

The Court therefore recommends that the District Judge order Defendants Davis and Williams to answer.[8]   The undersigned further recommends that the District Judge dismiss Defendant Durben as a Defendant.

3. *Estrada's claim that Defendant Bundy required him to remove a blanket from a cell light in violation of his medical restrictions survives screening.*

Estrada alleges that on October 15, 2019, Defendant Bundy "ordered [him] to climb on the toilet and take a blanket down that [his] cell mate had hanging over the light." Compl. 6. Estrada claims that he "told Defendant Bundy [he] [has] medical disabilities . . . and [his] medical restrictions prevent[] [him] from climbing." Questionnaire 8. According to Estrada, however, Defendant Bundy responded that she did not "give a damn" and directed Estrada to "climb up there" or she would "write [Estrada] a disciplinary case." Compl. 6. Estrada contends he complied with Defendant Bundy's order and suffered "discomfort in [his] back and leg." Questionnaire 9. Accepting Estrada's allegations as true, as the Court must at this stage, he has alleged sufficient facts to state a claim for deliberate indifference against Defendant Bundy. *See, e.g.*, *David v. Hill*, 401 F. Supp. 2d 749, 759 (S.D. Tex. 2005) (finding prisoner's allegation that defendant "forced him to bend over, against his medical restrictions, until he fell onto his knees," stated claim for

---

[8] The undersigned acknowledges that there is some question as to whether pain, without an accompanying physical symptom, can constitute injury that is more than de minimis such that Estrada can recover monetary damages. *See, e.g.*, *Welch v. Tex. Tech Univ. Health Svcs. Ctr.*, Civil Action No. 5:09–CV–133–BG ECF, 2010 WL 2813759, at *3 (N.D. Tex. Feb. 25, 2010) ("It appears that the Fifth Circuit has not addressed whether physical pain that is not accompanied by a physical effect is a *de minimis* injury . . . that would prevent the recovery of compensatory damages under 42 U.S.C. § 1997e(e)."). Estrada, however, also seeks punitive damages. *See* Compl. 11. Thus, his claims are not barred by § 1997e(e) even if the pain he allegedly suffered amounts to de minimis harm. *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 605–06 (5th Cir. 2008) ("Despite the limitations imposed by § 1997e(e), we have recognized that a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights.").

deliberate indifference sufficient to survive screening). The Court therefore recommends that the District Judge order Defendant Bundy to answer.

### C. Estrada has not pleaded facts demonstrating that any Defendant violated the Constitution by failing to protect him.

Estrada alleges that Defendants Durben, Williams, and Carpenter should have placed him in protective custody after Estrada reported to them on various occasions that he feared for his safety. Compl. 9; Questionnaire 7–8. Estrada asserts that "inmates were making threats toward's [sic] any inmates they find to have a sexual offense (which [Estrada] have [sic]) . . . ." Questionnaire 2–3, 7–8. Estrada does not contend that another inmate harmed him after Defendants Durben, Williams, and Carpenter refused to transfer him to protective custody; instead, Estrada states that he "live[d] in fear." *Id.* at 3.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence at the hands of other prisoners. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). Prison officials must guard against current threats, as well as sufficiently imminent dangers that may cause harm in the future, but not every injury caused by another prisoner gives rise to constitutional liability. *Horton v. Cockrell*, 70 F.3d 397, 400–01 (5th Cir. 1995).

To state a viable constitutional claim for failure to protect, a plaintiff must show: (1) he was subjected to conditions posing a substantial risk of serious harm; and (2) prison officials were deliberately indifferent to his need for protection. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Deliberate indifference "is an extremely high standard to meet" (*Domino*, 239 F.3d at 756), and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm *and* they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837. Consequently, an official's failure to alleviate a risk he should have perceived, but did not, does not constitute deliberate indifference. *See id.* at 837–38. Rather, the

inmate must show that the official actually knew of and disregarded the excessive risk to inmate safety. *Id.* at 837. Thus, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The known risk must be more than just some level of risk and must be "excessive." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

Here, Estrada merely asserts that unnamed inmates made threats based on his status as a sex offender. *See* Questionnaire 2–3. As pleaded, Estrada at best claims that unidentified inmates issued general threats. While unfortunate, it is common for inmates to threaten each other with violence in prison environments. *See Newton v. Black*, 133 F.3d 301, 307–08 (5th Cir. 1998). "If action on the part of prison officials was constitutionally required every time a threat was reported, inmates would quickly learn to control the prison environment simply by making threats." *Hamilton v. Dretke*, No. 7:06–CV–043–O, 2009 WL 320777, at *2 (N.D. Tex. Feb. 10, 2009). Estrada has failed to show that Defendants possessed the requisite knowledge that a substantial risk of serious harm existed, or that they ignored such risk. *See, e.g.*, *Hill v. Thomas*, 326 F. App'x 736, 737 (5th Cir. 2009) (affirming the dismissal of inmate's failure to protect claim when inmate failed to show defendants had knowledge of a substantial risk of serious harm to inmate prior to the incident at issue).

Moreover, Estrada concedes that he did not suffer actual physical injury as a result of the verbal threats. *See* Questionnaire 2–3. He therefore cannot state a cognizable claim for monetary damages on this basis. *See, e.g.*, *Castellano v. Treon*, 79 F. App'x 6, 7 (5th Cir. 2003) ("[Prisoner's] failure-to-protect claim fails because he concedes that he suffered no actual physical injury resulting from the prison officials' purported failure to protect."); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) ("[Prisoner's] complaint and reply do not allege any physical injury

[in connection with his failure to protect claim]. His claim for damages is therefore barred."). For these reasons, the undersigned recommends that the District Judge dismiss Estrada's failure-to-protect claims against Defendants Durben, Williams, and Carpenter.

### D. Estrada has not pleaded facts demonstrating that Defendants Bundy or Calloway unconstitutionally retaliated against him.

Estrada contends that on an unspecified date, he wrote a grievance against Defendant Bundy regarding the October 15, 2019, incident where Bundy required Estrada to remove a blanket from the cell light. Questionnaire 16–17. Estrada alleges Defendant Bundy subsequently began a "campain [sic] of harassments [sic]: letting certain inmates in and out of their cell throughout the day, but refusing me . . .; [and] any items I would bring out of my cell with me . . . Bundy would wait until I would set them down" and throw the items on the floor. *Id.* at 17. Estrada conclusorily claims that Defendant Bundy's actions were intended "to prevent [him] from filing future grievances," but he does not assert that Bundy's conduct actually stopped or prevented him from filing grievances. *See id.* at 16–17.

Estrada also avers that Defendant Calloway retaliated against him after he "refus[ed] to touch soiled clothes." Mem. of Laws 7. Specifically, Estrada asserts that Defendant Calloway placed Estrada in separation for two hours and also conducted an illegal cell search in retaliation.[9] *Id.* at 7, 11; Compl. 7; Questionnaire 14–15.

---

[9] To the extent Estrada asserts that Defendant Calloway conducted an illegal cell search in violation of his Fourth Amendment rights (Mem. of Laws 6), Estrada cannot state a cognizable claim. *See Rickerson v. Rust*, CIVIL ACTION NO. 5:17cv172, 2019 WL 8500865, at \*9 (E.D. Tex. Nov. 13, 2019) (dismissing prisoner's claim that seizure of legal papers violated his Fourth Amendment rights because prisoners have no expectation of privacy in their cell), *R. & R. adopted by* 2020 WL 633582 (E.D. Tex. Feb. 11, 2020). The Supreme Court has explicitly held that "the Fourth Amendment proscription against unreasonable searches *does not apply within the confines of the prison cell*." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (emphasis added). In *Hudson*, the Supreme Court reasoned that "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained." *Id.* at 527. These legitimate security concerns justify such searches, which are "a matter lodged in the sound discretion of the institutional officials." *Block v. Rutherford*, 468 U.S. 576, 591 (1984).

A plaintiff must demonstrate the following to establish a claim for retaliation: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation. *Jones*, 188 F.3d at 325 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Instead, "'[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods*, 60 F.3d at 1166). In evaluating such claims, the Fifth Circuit has cautioned that "prisoners' claims of retaliation are regarded with skepticism" and should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).

Estrada avers that Defendant Bundy retaliated after Estrada filed a grievance complaining of Bundy's October 15 actions. Questionnaire 16–17. Courts have generally recognized that prison officials cannot retaliate against prisoners for exercising their right to file an administrative grievance. *See Huff v. McCullough*, No. 2:12–CV–254, 2012 WL 5464960, at *5 (S.D. Tex. Nov. 8, 2012) (citing *Jackson v. Cain*, 864 F.2d 1235, 1248–49 (5th Cir. 1989)). Here, however, Estrada has not alleged facts showing that Defendant Bundy's purported acts deterred Estrada from engaging in constitutionally protected activity. *See id.* at *6. Thus, Estrada's claim fails. *See, e.g.*, *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) ("Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." (citation omitted)); *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006)

(explaining that "inmate's retaliation claim must allege adverse acts that would chill or silence a person of ordinary firmness from future First Amendment activities" (internal quotation marks omitted)); *Johnson v. Parks*, No. Civ.A.5:03–CV–024–C, 2004 WL 2101669, at \*5 (N.D. Tex. Sept. 15, 2004) (dismissing prisoner's retaliation claim in part because he did not demonstrate that defendant's action caused prisoner to stop, or prevented him from, filing grievances or lawsuits), *aff'd*, 182 F. App'x 300 (5th Cir. 2006).

Estrada likewise fails to state a viable claim for retaliation against Defendant Calloway. Estrada contends that Defendant Calloway retaliated against him after he refused to touch clothes with feces on them. Specifically, Estrada states that "during laundry exchange . . . , I attempted to explain what happen [sic], and why my [soiled] clothes was [sic] in a bag, but Defendant Calloway state [sic], 'I dont [sic] care if you want to exchange your clothes, your [sic] going to take everything out of the bag . . . . Compl. 6. According to Estrada, "[a]bout 10 minutes later, . . . Defendant Calloway told another officer to handcuff me, and take me to lock up for refusing a direct order." *Id.* at 7; *see* Questionnaire 15 (conceding that Defendant Calloway "ordered [him] to remove the clothes with feces" but he "refused"). Estrada possesses no constitutional right to disobey an officer's order. *See, e.g.*, *Buentello v. Rayford*, CIVIL ACTION NO. 6:15cv780, 2018 WL 3625858, at \*6 (E.D. Tex. Mar. 14, 2018) (recommending dismissal of prisoner's retaliation claim because prisoner "has no constitutional right to choose which prison orders he will follow" and therefore failed to plead facts supporting the first element of a retaliation claim), *R. & R. adopted by* 2018 WL 3619244 (E.D. Tex. July 29, 2018). His retaliation claim therefore fails at the first element. In addition, similar to his claim against Defendant Bundy, Estrada does not plead facts demonstrating that Defendant Calloway's alleged retaliatory acts actually deterred him from pursuing constitutionally protected activities such that the Court could conclude Calloway

subjected Estrada to adverse retaliatory acts.[10]  *See* Questionnaire 14 (alleging that he suffered

harm from the purported retaliatory act but failing to demonstrate that he was deterred from further

constitutionally-protected activity); *Bibbs*, 541 F.3d at 270 (5th Cir. 2008); *Morris*, 449 F.3d at

685.

For these reasons, the undersigned recommends that the District Judge dismiss Estrada's

retaliation claims.

### E. Defendant Martinez's alleged disposal of Estrada's property did not violate the Constitution.

Estrada alleges that on October 16, 2019, officials transported him to a different facility

"on Benchwarrant [sic]."  Compl. 6; Questionnaire 9.  Estrada apparently left his property at the

Daniel Unit, believing that he "was going to a Medical Unit, and [would] return in a few days."

Questionnaire 10.  While he was gone, Estrada claims Defendant Martinez disposed of his

property.  *Id.*

An official's actions—whether negligent or intentional—that result in a loss of property

constitute a state tort action rather than a federal civil rights claim.  Indeed, a state actor's

---

[10] Estrada's claim that Defendant Calloway violated his equal protection rights because Estrada "was the only person expected to touch feces in order to exchange clothes" similarly fails to state a claim. Questionnaire 12. To successfully establish an equal protection claim, a plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins v. Kaspar*, 393 F.3d 559, 566 (5th Cir. 2004) (citation omitted). A plaintiff "must prove the existence of purposeful discrimination, which implies that the decisionmaker selected a particular course of action at least in part because of the adverse impact it would have on an identifiable group." *Cotton v. Booker*, No. 98-60106, 1998 WL 912201, at *1 (5th Cir. Dec. 18, 1998) (citation omitted). "[A]bsent any allegation of an improper motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief." *Thompson v. Patteson*, 985 F.2d 202, 207 (5th Cir. 1993). Estrada does not allege Defendant Calloway treated him differently based on his race or religion or some other improper motive. *See* Compl. 7; Questionnaire 12. Estrada merely complains that he is the only inmate that Defendant Calloway ordered to remove soiled clothes from the laundry bag—an order Estrada concedes he refused to follow. Compl. 7; Questionnaire 12. Any claim based on a denial of equal protection should therefore be dismissed. *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (affirming dismissal at summary judgment prisoner's equal protection claim where he "alleged no specific act of discrimination . . . [or] discriminatory intent" but instead "rest[ed] his claim on only his personal belief that discrimination played a part in his continued residency in extended lockdown"); *Gonzales v. Currie*, Civil Action No. 2:13–CV–201, 2014 WL 222353, at *2 (S.D. Tex. Jan. 21, 2014) ("Neither personal belief nor vague and conclusory allegations are sufficient to raise an equal protection claim." (citation omitted)).

negligence that results in an unintentional loss of property does not violate the Constitution. *See Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). Similarly, an intentional deprivation of personal property does not give rise to a viable constitutional claim as long as the prisoner has access to an adequate post-deprivation state remedy. *See Hudson*, 468 U.S. at 533; *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (citing several cases for support) ("An inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally.").

Here, Texas substantive law provides an adequate post-deprivation remedy for persons asserting claims such as those raised herein by Estrada—pursuing a conversion claim in state court. *See, e.g., Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Assuming, without finding, that Defendant Martinez, or any other person, did in fact dispose of Estrada's property as alleged, Estrada may have a cause of action in state court; however, he cannot pursue a federal constitutional claim.[11] *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (affirming dismissal of prisoner's claim that defendant seized his religious materials in violation of TDCJ policy because "Texas's tort of conversion provides an adequate post-deprivation remedy for prisoners

---

[11] Estrada's questionnaire responses indicate that his religious and legal materials were among the property thrown away, which Estrada claims violated his First Amendment rights. Questionnaire 10. The Court specifically asked Estrada to describe the harm he suffered as a result of Defendant Martinez disposing of this property. *Id.* In response, Estrada provided no facts showing that the purported disposal impacted his ability to practice his religion or that he lost an actionable legal claim as a result. *Id.* Any claim that the disposal violated his First Amendment rights therefore similarly lacks merit. *See, e.g., Price v. Lofton*, CIVIL ACTION NO. 20-0073, 2020 WL 1482464, at *4 (W.D. La. Mar. 2, 2020) (recommending dismissal of prisoner's claim "that defendants deprived him of his right to practice religion when they either lost, confiscated, or destroyed his Bible and other religious materials" where prisoner alleged no more than de minimis harm), *R. & R. adopted by* 2020 WL 1486797 (W.D. La. Mar. 23, 2020); *Sterns v. Evans*, CIVIL ACTION NO. 9:14-CV-5, 2017 WL 1179173, at *3 (E.D. Tex. Feb. 27, 2017) (recommending dismissal of access to courts claim because prisoner did not allege facts demonstrating loss of an actionable claim due to defendants' conduct), *R. & R. adopted by* 2017 WL 1155076 (E.D. Tex. Mar. 28, 2017); *Fowler v. Whitfield*, 2:15–CV–0290, 2015 WL 10570735, at *2 (N.D. Tex. Dec. 7, 2015) (recommending dismissal of prisoner's access to courts claim where prisoner failed to "allege how any act or omission by defendant . . . caused him actual prejudice with respect to his section 1983 lawsuit"), *R. & R. adopted by* 2016 WL 1298971 (N.D. Tex. Mar. 31, 2016), *appeal dismissed*, 697 F. App'x 392 (5th Cir. 2017); *Newby v. Pate*, No. 2:06-CV-0127, 2007 WL 2791455, at *9 (N.D. Tex. Sept. 4, 2007) (recommending dismissal of prisoner's claim that defendant's seizure of his religious literature violated his First Amendment rights, where prisoner did not allege confiscation interfered with his ability to practice his religion).

claiming loss of property without due process"); *see Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983).

### F. Estrada has not stated a meritorious constitutional claim based on his alleged exposure to unsanitary conditions.

According to Estrada, on October 23, 2019, his cell flooded, "causing toilet water and feces to go everywhere, including on [his] clothes." Compl. 6. Estrada alleges that Defendants Brown and Doe required him to pick up his property using rags as gloves and, "[a]s [he] w[as] picking up the clothes, feces began soaking through the rags getting all over [his] hands." *Id.* This exposure, Estrada contends, "put [him] at risk of future long term injury[,] . . . caused psychological trama [sic]," "made [him] nauseated," and triggered a migraine headache. Questionnaire 11. Estrada concedes, however, that he was able to wash his hands approximately one and a half hours following the exposure, i.e., the time required for him and his cellmate to clean up the overflow and a plumber to repair the problem. *Id.* at 12. Estrada asserts that the cleaning caused him "pain in [his] back and leg." *Id.*

The day after the sewage incident, i.e., October 24, Estrada states that Defendant Calloway directed him to empty his laundry bag (which contained clothes with sewage on them), but he "refused to get feces on [his] hands again, so [he] went back to [his] cell, without getting a change of clothes." Compl. 6–7. Stated differently, Estrada acknowledges that he did not comply with Defendant Calloway's order and therefore did not come in contact with sewage that day. *See id.*[12]

"Filthy, unsanitary" cells may violate the Constitution. *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). To establish a constitutional violation, a prisoner must demonstrate that the conditions of his confinement were "sufficiently serious" and that the defendant acted with

---

[12] Estrada asserts the only harm he suffered is that Defendant Calloway placed him in segregation where he "was forced to stand the entire time, because the only thing in there was a shower stall." Questionnaire 12. Estrada alleges the placement in segregation violated his due process rights—the Court addresses this claim below.

"deliberate indifference" in the face of knowledge of a "substantial risk of serious harm" to the prisoner. *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (citing *Farmer*, 511 U.S. at 834). To establish deliberate indifference, the prisoner must show that defendants "(1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).

Though not dispositive, courts consider the length of time a prisoner was exposed to unsanitary conditions when assessing a conditions of confinement claim based on sanitation problems. *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."). That is, a prisoner generally cannot state a viable constitutional claim where he faces sanitation problems for only a brief period. *See id.*; *Desroche v. Strain*, 507 F. Supp. 2d 571, 581 (E.D. La. 2007) ("[A] short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation."); *Unger v. Taylor*, CIVIL ACTION NO. 6:06-CV-466, 2007 WL 9711406, at *12 (E.D. Tex. Sept. 18, 2007) (noting that "a short term sanitation problem does not amount to a constitutional violation"), *R. & R. adopted by* 2008 WL 11422152 (E.D. Tex. Feb. 1, 2008), *aff'd* 368 F. App'x 526 (5th Cir. 2010). Moreover, a plaintiff cannot establish deliberate indifference to unsanitary conditions where "reasonable measures were taken in response to his complaints." *See Johnson v. Anderson*, 255 F. App'x 851, 853 (5th Cir. 2007). And, "a briefly delayed yet reasonable response does not constitute deliberate indifference." *Id.* at 854.

As pleaded, Estrada describes only a brief exposure to limited unsanitary conditions. Estrada acknowledges that after approximately one and a half hours, he was able to wash his hands. *See* Questionnaire 11–12. For this reason alone, he has not stated a claim. *See, e.g., Desroche,*

507 F. Supp. 2d at 581.  Moreover, the facts pleaded do not describe deliberate indifference on the part of any Defendant.  Estrada contends that Defendants Brown and Doe required him to pick-up his property using rags as gloves "because they had no gloves." Questionnaire 11.  Estrada further states that Defendants provided cleaning supplies—a mop, bucket, and rags—so that Estrada and his cellmate could clean their cell.  *Id.* at 12.  While Estrada may have wanted different supplies to pick-up his soiled property and clean his cell, or he may have preferred that someone other than himself clean his cell, the facts alleged do not demonstrate deliberate indifference.  *See, e.g.*, *Schmitt v. United States*, CIVIL ACTION NO. 3:17CV117-TSL-RHW, 2018 WL 4102517, at \*4 (S.D. Miss. Aug. 6, 2018) (concluding prisoner failed to allege viable conditions of confinement claim where officials "instructed . . . inmates to block the [flow of sewage] using bedding and clothing," an orderly cleaned the hallway after the flooding stopped, and officials issued cleaning supplies approximately 25 hours after the incident); *McGiffin v. Valdez*, Civil Action No. V–07–043, 2009 WL 3073939, at \*5 (S.D. Tex. Sept. 18, 2009) (dismissing prisoner's claim regarding conditions of confinement where prisoner did not plead facts showing that defendants were aware of a substantial risk of harm or that the sanitation problem posed a serious threat to prisoner's health).  To the contrary, Estrada's own allegations indicate that Defendants acted promptly and reasonably, minimizing Estrada's exposure to the condition.

Finally, the undersigned observes that Estrada ascribes only psychological harm and de minimis physical injury to the alleged sewage exposure.  Specifically, Estrada asserts that he became nauseated, suffered a migraine, and experienced anxiety as a result of the incident.  Questionnaire 11.  Estrada cannot recover monetary damages for emotional injury without an allegation that he suffered more than de minimis physical injury.  *See, e.g.*, *Alexander v. Tippah Cty.*, 351 F.3d 626, 631 (5th Cir. 2003) (concluding prisoners were barred from recovering for

emotional and mental injuries where the only physical injury suffered in connection with exposure to raw sewage was nausea, which amounted to de minimis harm); *Dean v. Gusman*, No. Civ.A.06 3243, 2006 WL 3469558, at *4 (E.D. La. Nov. 28, 2006) (dismissing prisoner's claim based on exposure to raw sewage where "[t]he only discomfort alleged by [prisoner] [was] that he was nauseous after having lived in sewage for five days," which constituted a de minimis physical injury). For these reasons the Court recommends that the District Judge dismiss Estrada's conditions of confinement claim against all Defendants concerning exposure to sewage.

### G. Estrada has not pleaded facts demonstrating that Defendant Calloway violated his due process rights.

Estrada contends that after he refused to touch his soiled clothing, Defendant Calloway "told another office to handcuff [him], and take [him] to lock up for refusing a direct order." Compl. 7. Estrada alleges his placement in "Lockdown" for two hours without first being given a hearing violated his due process rights. Questionnaire 12; *see* Compl. 7. According to Estrada, officials placed him in a "5'x5' shower stall" (Compl. 7), which caused him "back pain, and pain in [his] leg, because [he] was force[d] to stand the entire time, because the only thing in there was a shower stall." Questionnaire 12.

Estrada does not specify whether he intends to bring a substantive or procedural due process claim. Under either standard, however, Estrada has failed to plead any facts demonstrating a violation. To trigger federal substantive due process protection, a prisoner must show the deprivation of a constitutionally protected right and that the governmental deprivation was not "rationally related to a legitimate governmental interest." *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006) (citation omitted). Where a deprivation imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," a prisoner can state a viable substantive due process claim. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The alleged placement in a shower stall where he "was force[d] to stand" for two hours does not describe an atypical and significant hardship implicating the Constitution.[13] *See id.* at 478 (observing that the Due Process Clause "does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"); *Taylor v. Jagers*, 115 F. App'x 682, 684 (5th Cir. 2004) ("[Prisoner's] placement in administrative segregation, standing alone, [did] not constitute a deprivation of a constitutionally cognizable liberty interest." (internal quotation marks omitted)); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (explaining that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest" (internal quotation marks omitted)). Simply put, Estrada's placement in "Lockdown" for two hours—a placement Estrada acknowledges was due to his "refusing a direct order" (Compl. 7)—amounts to an incident of ordinary prison life.

Similarly, Estrada has not pleaded facts stating a procedural due process claim. Estrada alleges that Defendant Calloway placed him in "Lockdown" for two hours without conducting "a hearing" due to his refusal obey an order. Questionnaire 12; *see* Compl. 7. Estrada was not entitled to a hearing prior to such placement. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976) (explaining that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution"); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citation omitted) ("Classification of prisoners is a matter left to the discretion of prison officials."); *see also Wilkinson v. Austin*, 545 U.S. 209, 221

---

[13] Estrada does not explain why he had "to stand the entire time"—e.g., why he was unable to sit on the floor of the shower stall. *See* Questionnaire 12.

(2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

Thus, the undersigned recommends that the District Judge dismiss Estrada's due process claim against Defendant Calloway.

### H. Estrada's purported short-term exposure to cold conditions did not violate his constitutional rights.

Estrada alleges that while Defendant Perez conducted a search of Estrada's cell on November 21, 2019, Perez required Estrada to go outside for two hours in a t-shirt, pants, and shower slides—without a jacket—in 47 degree rainy weather. Compl. 7; Questionnaire 13. Estrada claims the two-hour exposure to cold caused him "pain and discomfort" as well as migraines for two days. Questionnaire 13.

Federal courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998). As discussed above, to state a viable claim based on the conditions of his confinement, a prisoner must first demonstrate that the conditions were "sufficiently serious." *Williams*, 797 F.3d at 280 (citing *Farmer*, 511 U.S. at 834); *see Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). The temporary (approximately two hour) and relatively innocuous conditions Estrada alleges he experienced, although perhaps uncomfortable, do not amount to a constitutional violation. *See Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (quoting *Woods*, 51 F.3d at 581) (explaining that "merely 'uncomfortable' heat in a prisoner's cell does not reflect 'a basic human need that the prison has failed to meet' and is not constitutionally suspect"); *Johnson v. Tex. Bd. of Criminal Justice*, 281 F. App'x 319, 321 (5th Cir. 2008) (explaining that prisoner's "allegations regarding cold were too vague and conclusory to state a claim of a sufficiently serious deprivation that denied the minimal civilized measure of life's necessities" (internal quotation marks omitted));

*Mays v. Springborn*, 575 F.3d 643, 648–49 (7th Cir. 2009) (explaining prisoner had not stated an Eighth Amendment claim based on defendant's alleged refusal to provide him with adequate clothing to protect against cold weather, where although prisoner alleged he caught colds and suffered "hurt ears and numb hands," he did not show lengthy exposure to the cold or that he experienced anything other than mere discomfort); *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004) (quoting *Hudson*, 503 U.S. at 9) (noting that "'*extreme* deprivations are required to make out a conditions-of-confinement claim' under the Eighth Amendment"). Stated differently, Estrada has not alleged facts showing he was subjected to the type of sufficiently serious conditions that implicate the Constitution. Accordingly, the undersigned recommends that the District Judge dismiss Estrada's claim based on his placement outside for two hours.[14]

## I. Estrada does not possess a constitutional right to access a grievance system or have grievances resolved to his satisfaction.

Estrada claims that Defendant Cogburn "failed to investigate and correct the wrongful misconduct Defendant's [sic] Carpenter and Davis was [sic] engaging in." Questionnaire 20. He further contends that Defendants Castillo and Perez did not provide grievance forms upon Estrada's request. Compl. 7; Questionnaire 18.

Estrada does not have a constitutional right to have grievances resolved to his satisfaction. *See, e.g.*, *Garrett v. Stephens*, 675 F. App'x 444, 447 (5th Cir. 2017) (citing *Geiger*, 404 F.3d at

---

[14] To the extent Estrada alleges that Defendant Perez treated him differently than other inmates in violation of the Equal Protection Clause, Estrada has again failed to state a claim. Estrada conclusorily asserts that "Defendant Perez only made certain inmates go out like this some inmates was [sic] allowed to go outside fully dressed with a jacket and shoes; this violates the Equal Protection." Questionnaire 13; *see* Compl. 7 ("I started to put my jacket and shoes on, but Perez said I can only wear my shower slides . . . and no jacket, (he stated it's hot anyway.")). Similar to his equal protection claim against Defendant Calloway, Estrada does not allege Defendant Perez treated him differently based on his race or religion or some other improper motive. *See* Compl. 7; Questionnaire 13. Estrada merely complains that some inmates were permitted to wear jackets outside but he was not. Compl. 7; Questionnaire 13. The District Judge should therefore dismiss his claim against Defendant Perez. *See Woods*, 51 F.3d at 580; *Gonzales*, 2014 WL 222353, at *2.

374) (explaining that a prisoner "does not have a constitutional right to have grievances resolved in his favor or to have his claims reviewed per a grievance process that is responsive to his perceived injustices; thus, the denials of his grievances do not implicate his constitutional rights or give rise to a § 1983 claim against [defendant]"); *Dugas v. Cain*, Civil Action No. 09–0177–BAJ–CN, 2010 WL 4695313, at *5 (M.D. La. Oct. 20, 2010) (finding that "any claim regarding the alleged failure of the defendants to properly address, investigate or respond to [prisoner's] complaints or administrative grievances regarding his medical care is without legal foundation"), *R. & R. adopted by* 2010 WL 4704446 (M.D. La. Nov. 12, 2010). He therefore cannot state a claim against Defendant Cogburn based on her alleged failure to investigate.

Estrada's claim that Defendants Castillo and Perez did not provide grievance forms similarly fails to implicate the Constitution.[15] Estrada does not specify how Defendants' purported failure to supply grievance forms violated his constitutional rights. As alleged, to the extent he complains that the lack of forms constituted a denial of access to the prison grievance system, the Constitution does not afford such a stand-alone right. *See, e.g.*, *Spencer v. Jackson*, CIVIL ACTION NO. 1:17cv43, 2018 WL 4577408, at *1 (E.D. Tex. Aug. 21, 2018) (granting defendant's motion to dismiss on prisoner's claim that defendant "would not provide him with grievance forms or allow him to file a grievance" because prisoners "do not have a constitutionally protected [due process] right of access to a grievance procedure"). Liberally construing Estrada's allegation as a violation of his First Amendment rights fares no better. Estrada pleads no facts suggesting that his inability to complete grievances prevented him from accessing the courts or otherwise denied him

---

[15] The Court observes that Estrada's pleadings are internally contradictory. Estrada contends that Defendants Castillo and Perez failed to provide grievance forms related to the claims in this action. Questionnaire 18. Estrada also asserts, however, that he filed at least seven grievances between October and December 2019 regarding his medical care, lost property, and Defendants Calloway's and Perez's actions. Compl. 10. Regardless, the denial of grievance forms, standing alone, is not actionable, and the undersigned recommends dismissal on this basis.

the ability to complain about constitutionally protected conduct. Compl. 7 (alleging that Defendant Perez merely informed Estrada that he did "not have any grievance forms"); Questionnaire 18 (claiming that Warden Castillo's alleged failure to provide grievance forms resulted in Castillo not "properly investigat[ing] 'All' complaints . . . [and thus,] his subordanants [sic] [were not] . . . put on notice of their wrongful actions"). He therefore fails to state a claim. *See, e.g.*, *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that [grievance] procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."). Estrada's claims against Defendants Cogburn, Castillo, and Perez based on the failure to investigate or provide grievance forms should therefore be dismissed.

### J. Estrada cannot state a cognizable claim against Defendants Tapscott and Thompson based on their purported use of force against other inmates.

Estrada claims that on December 4, 2019, Defendants Tapscott and Thompson used excessive force against several inmates. Compl. 8. As for him personally, Estrada acknowledges that Defendants Tapscott and Thompson did not actually use force against him, although he alleges they threatened to do so. Questionnaire 1.

The Fifth Circuit has long recognized that verbal threats and harassment made by a correctional officer do not constitute a basis for a § 1983 claim under the Constitution. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (citation omitted); *see Rader v. Lubbock Cty.*, No. Civ.A. 5:01-CV-258-C, 2003 WL 21145788, at *13 (N.D. Tex. Apr. 25, 2003) (quoting *Robertson*, 70 F.3d at 24) (dismissing prisoner's claim that defendant verbally taunted and threatened him because "mere threatening language and gestures of a custodial office[r] do not, even if true,

amount to constitutional violations"). Verbal threats, abusive language, or other harassment, "while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Johns v. Miller*, No. Civ.A. 05-2489, 2005 WL 3592248, at *7 (E.D. La. Oct. 26, 2005) (citation omitted); *see also Collins v. Cundy*, 603 F.2d 825, 827–28 (10th Cir. 1979) (holding that a sheriff's threat to hang a prisoner did not state an actionable claim under § 1983).

Based on the foregoing authority, Estrada's allegation that Defendants Tapscott and Thompson verbally threatened him does not rise to the level of a viable constitutional claim.[16] Accordingly, the District Judge should dismiss this claim.

### K. Estrada has not demonstrated that Defendants Castillo, Collier, or Cogburn were involved in any constitutional violations that would give rise to supervisory liability.

Estrada asserts that Defendant Castillo, Warden of the Daniel Unit, "is legally responsible for the operation of the Daniels [sic] Prison Unit, and for the overall welfare of all the inmates of that prison." Compl. 2. Regarding Defendant Collier, Estrada states that "[h]e is legally responsible for the overall operation of the [TDCJ] and each institution under it's [sic] jurisdiction, including the Daniel's [sic] Unit." *Id.* at 3. In his questionnaire responses, Estrada concedes that he named Castillo and Collier as Defendants primarily because they hold supervisory positions, although he further avers that Defendant Castillo failed to properly train his subordinates and Defendant Collier "allowed official's [sic] to continue their employment although he was aware of their acts of misconduct." Questionnaire 17–19. Similarly, Estrada alleges that Defendant

---

[16] To the extent Estrada's allegation may be read as one asserting a claim on behalf of his fellow inmates, he lacks standing and therefore cannot state a meritorious claim. *See, e.g.*, *Wilson v. Caldwell Corr. Ctr.*, CIVIL ACTION NO. 3:16-CV-1321, 2016 WL 7840735, at *2 (W.D. La. Dec. 5, 2016) (concluding prisoner lacked standing to raise claim based on defendants' use of force against fellow inmates, where prisoner "allege[d] no instances in which *he* was the victim of such force"), *R. & R. adopted by* 2017 WL 244749 (W.D. La. Jan. 18, 2017).

Cogburn is a "medical coordinator" (Compl. 3) who failed to "properly supervise[] the medical staff at Daniel's [sic] Unit." Questionnaire 20.

It is well established that supervisory officials are not liable for the acts of their subordinates unless: (1) they affirmatively participated in an act that caused a constitutional deprivation, or (2) they implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A prisoner must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as prison supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303.

Estrada generally claims that Defendant Castillo failed to properly train his subordinates. Questionnaire 17–19. Estrada contends that Defendant Castillo "was aware of Defendant[s] Tapscott and Thompson's excessive use of force" against fellow inmates as well as "the lack of grievance material," thus demonstrating Castillo's personal involvement. *Id.* at 18. As discussed above, however, the lack of access to grievance forms and the use of force against fellow inmates cannot form the basis of a valid constitutional claim. Without an underlying constitutional violation, Estrada cannot state a viable supervisory liability claim against Defendant Castillo. *See Mouille*, 977 F.2d at 929. Moreover, Estrada's bald assertion that Defendant Castillo failed to properly train his employees does not state a claim. *See, e.g.*, *Rivera v. Salazar*, 166 F. App'x 704, 706 (5th Cir. 2005) (affirming dismissal of prisoner's claims against wardens, where prisoner did not "describe[] the history of complaints against [defendant] or explain[] how [defendant's] disciplinary system was 'inadequate and impotent,'" thus resulting in a conclusory allegation insufficient to establish supervisory liability); *Walker v. Collier*, CIVIL ACTION NO. 6:17cv166,

2019 WL 1421152, at *8 (E.D. Tex. Mar. 28, 2019) (explaining that for "a failure to train claim, the plaintiff must show that the supervisor either failed to train or supervise the subordinate official, a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and that the failure to train or supervise amounts to deliberate indifference," as well as demonstrate "how a particular training program is defective"). Estrada merely alleges that Defendant Castillo failed to train his subordinates without providing any supporting facts, other than stating that "Castillo was made aware" of incidents that this Court has already concluded do not amount to constitutional violations. *See* Questionnaire 18.

Estrada's claim against Defendant Collier likewise fails because it is based on Collier's alleged failure to terminate employees after being notified through the grievance procedure of employees' unconstitutional conduct. *See* Questionnaire 19 ("Defendant Collier has allowed official's [sic] to continue their employment although he was aware of their acts of misconduct and excessive use of force. . . . Several inmates had filed complaints against the majority of the defendants in my complaint, and Collier purposely ignored the issues that was [sic] brought to his attention."). Fundamentally, the Constitution does not afford Estrada a right to dictate prison officials' personnel decisions. *See generally Pagonis v. Raines*, Case No. 4:17-CV-01-DC-DF, 2018 WL 9240919, at *4 (W.D. Tex. Aug. 10, 2018) ("Federal courts are not prison managers and injunctive relief in the form of an order to terminate a prison official's employment is not available in a § 1983 action." (internal quotation marks omitted)), *R. & R. adopted by* 2018 WL 9240916 (W.D. Tex. Sept. 10, 2018). Moreover, notification via grievances generally cannot supply the requisite personal involvement for supervisory officials. *See, e.g.*, *Lentworth v. Potter*, 255 F. App'x 903, 905 (5th Cir. 2007) (affirming dismissal of prisoner's claim that supervisory officials "were informed of . . . various retaliatory acts but did not take corrective action," where prisoner

did not allege officials "were personally involved in the retaliation or implemented an unconstitutional policy"); *Whitlock v. Stephens*, CIVIL ACTION NO. 5:14cv94, 2016 WL 11474208, at *5 (E.D. Tex. Oct. 5, 2016) (stating that prisoner "cannot use the grievance process to impute personal liability," where prisoner merely alleged that the warden investigated and signed prisoner's grievance), *R. & R. adopted by* 2016 WL 7155292 (E.D. Tex. Dec. 8, 2016). For this same reason, Estrada has failed to state a claim against Defendant Cogburn based on her supervisory role. *See* Questionnaire 20 (stating that "[a]ll medical grievances goes [sic] through Defendant Cogburn, and she failed to investigate and correct the wrongful misconduct Defendant's [sic] Carpenter and Davis was [sic] engaging in").

The undersigned therefore recommends that the District Judge dismiss Estrada's claims for supervisory liability against Defendants Castillo, Collier, and Cogburn.

### L. Estrada has not stated a viable claim under the ADA or the RA.

In addition to his § 1983 claims, Estrada asserts that Defendants Davis and Carpenter violated his rights under the ADA and RA. Mem. of Laws 7–9; Questionnaire 21–22. Estrada alleges that he suffers from mental and physical disabilities—"ADHD; paranoia; PTSD; severe depression; high anxiety," an abnormally functioning left leg, and damaged lower back, left hip, and knee joints. Questionnaire 21. Estrada claims that "Defendant Davis' decision to deny me my medical restrictions because 'I do not work,' is the same as the denial of service, and discrimination, because I could not work, because of my physical disabilities." *Id.* Estrada also characterizes Defendant Davis's purported denial of medical shoes as the "denial of service." *Id.* Estrada alleges Defendant Davis violated his right under the ADA and RA on the same days she acted with deliberate indifference—October 3 and November 5, 2019. *Id.* at 22. Finally, Estrada

contends that "Defendant Carpenter's actions should be added to the ADA, and RA claim," but Estrada pleads no facts supporting this contention. *Id.*

Title II of the ADA, which applies to public entities such as TDCJ, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (citations omitted). To state a claim under Title II of the ADA, a plaintiff must demonstrate: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). A qualifying disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

The RA similarly provides that a disabled individual shall not "solely by reason of her or his disability . . . be denied the benefits of . . . any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "To state a claim for relief under the RA, a plaintiff must allege: '(1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has . . . been denied benefits from, or otherwise been subject to discrimination under such program or activity.'" *Hay v. Thaler*, 470 F. App'x 411, 417–18 (5th Cir. 2012) (quoting *Melton*, 391 F.3d at 676 n.8).

The Fifth Circuit has recognized that "[j]urisprudence interpreting either [the ADA or RA] is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). This is because "the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The causation requirements for the ADA and RA, however, differ in that the RA proscribes discrimination "solely by reason of" disability, where the ADA states that "discrimination need not be the sole reason" for the discrimination. *Id.* (emphasis and citations omitted). Under either statute, a plaintiff must show intentional discrimination to recover compensatory damages. *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002).

Initially, the Court observes that, in effect, Estrada repleads his denial of medical care claim as one under the ADA and RA. *See* Questionnaire 21–22 (alleging that Defendant Davis should have medically restricted him to a first-floor cell and prescribed medical shoes). "A claim is not proper under the ADA [or RA] if it is simply a restatement of a claim for the denial of medical care." *Hale v. Abangan*, Civil Action No. 3:15-cv-170-CWR-FKB, 2018 WL 1053520, at *3 (S.D. Miss. Jan. 26, 2018) (citing *Walls v. Tex. Dep't Criminal Justice*, 270 F. App'x 358, 359 (5th Cir. 2008)). For this reason alone, Estrada's ADA and RA claims should be dismissed.

But even analyzing the merits of his claims, Estrada has not pleaded facts satisfying the elements of an ADA or RA claim. First, although Estrada avers that he suffers a host of physical and mental ailments, he has not alleged any facts—other than describing some of his symptoms— showing that these conditions render him disabled within the meaning of the ADA or RA. *See* Questionnaire 21. "It is well established that [m]erely having an impairment . . . does not make one disabled for purposes of the ADA [or the RA]." *Hale*, 642 F.3d at 501 (internal quotation

marks omitted). Absent pleading facts showing how his claimed impairments substantially limit the performance of a major life activity, Estrada fails to state a claim for relief. *See id.*; *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (explaining that PTSD, standing alone, "is not necessarily a disability contemplated by the ADA" and that "[t]he statute requires an impairment that substantially limits one or more of the major life activities"); *Willis v. Catahoula Corr. Ctr.*, No. 09–CV–1510, 2010 WL 2710405, at *4 (W.D. La. May 14, 2010) ("To obtain relief under the ADA, a plaintiff must demonstrate that his condition significantly impairs a major life activity, and plaintiff has made no such demonstration.").

More significantly, Estrada has not pleaded facts indicating that Defendants intentionally discriminated against him based on any qualifying disability. Estrada asserts that Defendants denied him medical accommodations and medical shoes. Questionnaire 21–22. As noted above, "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (internal quotation marks omitted); *see Whetstone v. Hall*, NO. 4:17CV158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)) ("Neither [the ADA or RA] covers the mere absence or inadequacy of medical treatment for a prisoner."). With respect to Estrada's allegation that Defendants denied him certain housing, he does not plead facts showing that such decisions had any connection to his alleged disabilities, or that Defendants intentionally treated him differently because of a disability. *See, e.g.*, *Back v. Tex. Dep't of Criminal Justice Corr. Inst. Div.*, 716 F. App'x 255, 258 (5th Cir. 2017) (affirming dismissal of prisoner's ADA claim where he did not allege defendant intentionally discriminated against him due to his disability); *Hay*, 470 F. App'x at 418 (affirming dismissal of prisoner's ADA and RA claims where he "[did] not allege, much less explain, how his alleged disabilities made it more difficult for him

to access the benefits of TDCJ's services [i.e., dentures,] or gave him less meaningful access to those services"). Without specific facts supporting the claim, i.e., facts showing that the denial of a service was *because of* his alleged disabilities, Estrada fails to establish the third element of an ADA or RA claim—that Defendants denied him a service with subjective intent to discriminate based on his alleged disabilities. *See, e.g., Bruce v. Little*, 568 F. App'x 283, 286 (5th Cir. 2014) (affirming district court's dismissal of prisoner's ADA claim where prisoner "failed to allege any facts supporting an ADA claim"); *Brigham v. Tex. Dep't of Criminal Justice*, Civil Action No. 1:15-CV-440, 2016 WL 5719698, at *7 (E.D. Tex. Aug. 29, 2016) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)) (dismissing prisoner's ADA claim because he had not pleaded facts establishing any of the elements and the court should not "'strain to find inferences favorable to plaintiff' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions'").

Because Estrada fails to plead facts suggesting Defendants Davis and Carpenter violated the ADA or RA, the District Judge should dismiss his claims.

**M. Any claim for injunctive or declaratory relief is moot.**

Estrada also seeks a preliminary and permanent injunction "ordering defendants to take notice of the plaintiff's medical restrictions, medical need's [sic], and the law's [sic] that protect them." Compl. 11. In addition, he asks the Court to grant "[a] declaration that the acts and omissions described [in his Complaint] violated plaintiff's rights . . . ." *Id.* On March 3, 2020, however, Estrada filed a notice of change of address reflecting that officials have transferred him from the Daniel Unit—the unit forming the basis of his Complaint—to another institution on a bench warrant. *See* ECF No. 7. Estrada pleads no facts showing that he expects to return to the Daniel Unit. *See id.* His requests for declaratory and injunctive relief are therefore moot. *See Oliver v.*

*Scott*, 276 F.3d 736, 741 (5th Cir. 2002) ("The transfer of a prisoner out of an [offending] institution often will render his claims for injunctive relief moot."); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (noting that even if prisoner were able to establish meritorious claim under the Eighth Amendment, he would not be entitled to injunctive or declaratory relief where prisoner had been transferred to another facility "[a]nd any suggestion of relief based on the possibility of transfer back to the [offending institution] [was] too speculative to warrant relief"); *Qadir v. Eason*, No. Civ.A. 1:01–CV–167–C, 2003 WL 22433910, at *4 (N.D. Tex. Aug. 12, 2003) (explaining that "a prisoner's claims for injunctive and declaratory relief following an alleged violation of the Eighth Amendment may be mooted by his transfer to another prison facility"); *see also Green v. Mansour*, 474 U.S. 64, 73–74 (1985) (holding that a declaratory judgment is unavailable as a remedy for retrospective, as opposed to ongoing, unconstitutional conduct).

**N. The District Judge should dismiss Estrada's claims against Defendants in their official capacities.**

To the extent Estrada seeks monetary damages against any Defendant in his or her official capacity, his claims are barred by the Eleventh Amendment. *Oliver*, 276 F.3d at 742. This is because a suit against Defendants in their official capacities is, in effect, a suit against TDCJ. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" (internal quotation marks omitted)); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)) (explaining that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). And TDCJ is immune from suit for money damages. *See Talib*, 138 F.3d at 213 ("As an instrumentality of the state, the TDCJ[] is immune from a suit for money damages under

the Eleventh Amendment."); *Dottin v. Tex. Dep't of Criminal Justice*, CIVIL ACTION NO. 1:13-CV-710, 2014 WL 11498078, at *11 (E.D. Tex. Nov. 25, 2014) (explaining that "TDCJ is an arm of the state of Texas and, as such, is immune from [suit] under the Eleventh Amendment"), *aff'd*, 627 F. App'x 397 (5th Cir. 2015).

## III.    Recommendation

For these reasons, the undersigned recommends that the United States District Judge dismiss with prejudice all of Estrada's claims except those for alleged deliberate indifference based on Defendant Davis's and Williams's refusal to reassign Estrada to a first-floor cell, as well as Defendant Bundy's order to climb in spite of Estrada's medical restrictions.  The undersigned recommends that the United States District Judge order Defendants Davis, Williams, and Bundy to answer or otherwise plead to those claims in their individual capacities.

## IV.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February 25, 2021.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE