UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| PATRICIO ESTRADA,<br>Institutional ID No. 2089041<br><br>                      Plaintiff,<br><br>v.<br><br>DIRECTOR, TDCJ-CID, *et al.*,<br><br>                      Defendants. | No. 5:20-CV-00030-H |

**ORDER ACCEPTING IN PART THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

After completing judicial screening of this prisoner civil-rights case under 28 U.S.C. §§ 1915 and 1915A, the United States Magistrate Judge made findings, conclusions, and a recommendation. (Dkt. No. 21.) Specifically, the Magistrate Judge recommended that the Court dismiss with prejudice all of Plaintiff's claims except for his deliberate indifference claims against Defendants Davis and Williams for their refusal to reassign him to a first-floor cell, and against Defendant Bundy for ordering him to climb in spite of his medical restrictions. (*Id.*) The Magistrate Judge recommended that the Court order Defendants Davis, Williams, and Bundy to answer or otherwise respond to these deliberate indifference claims. (*Id.*) Plaintiff filed objections. (Dkt. No. 25.)

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). In contrast, the district judge reviews any unobjected-to findings, conclusions, and recommendations for plain error. The Court has examined the record and reviewed the

unobjected-to portions of the FCR for plain error and, finding none, expressly accepts and adopts those portions of the Magistrate Judge's findings, conclusions, and recommendation.

Additionally, in light of Plaintiff's specific objections, the Court has conducted a de novo review of the relevant portions of the FCR and the record in this case. Many of Plaintiff's objections are either restatements of arguments made in his amended complaint (as supplemented by his responses to the Magistrate Judge's questionnaire[1]), arguments thoroughly addressed by the FCR, or conclusory statements insisting that his claims have merit. The Court finds it unnecessary to address some of these objections. Thus, except as noted below, Plaintiff's objections are overruled, and the Court expressly adopts the Magistrate Judge's reasoning.

1. **Plaintiff's Claims**

Plaintiff Patricio Estrada is a state prisoner proceeding pro se and *in forma pauperis*. His claims stem from his confinement in the Price Daniel Unit of the Texas Department of Criminal Justice (TDCJ). He sues 15 individual Daniel Unit officials as well as the TDCJ Director Brian Collier. He sues each defendant in both their individual and official capacities. Plaintiff's complaint describes several separate incidents, but it primarily focuses on the defendants' alleged mistreatment of—and inadequate accommodations for—Plaintiff's pre-existing medical conditions.

Plaintiff asserts that he suffered from several mental and physical ailments before he entered TDCJ. He states that he has dealt with chronic mental illness since 1988, including diagnoses of paranoid schizophrenia, bipolar disorder, Post Traumatic Stress Disorder

---

[1] *See Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976).

(PTSD), depression, and anxiety. He claims that he became physically disabled in 2012 after an SUV rolled over him, causing permanent disfigurement of his lower body. (Dkt. No. 1 at 4.)

After Plaintiff entered TDCJ, he was evaluated by a physical therapist in the Estelle Unit, who issued Plaintiff an ankle brace, a knee brace, and a pelvic brace. The therapist also entered several medical restrictions for him, including "(a) no climbing, (b) no walking on uneven surfaces, (c) no walking on wet surfaces, (d) limited standing, (e) no walking over 100 yards, and (f) lower bunk only." (*Id.*) Plaintiff also states that while he was housed in a county facility on a bench warrant, mental health personnel there found that due to his traumatic past, he should be housed in a single-man cell in the mental health dorm. But he acknowledges that he was not allowed to use his braces while he was in the county facility. Plaintiff describes a few transfers between different facilities, and he admits that the treatment for his conditions varied somewhat between different units.

Plaintiff's complaint here arose when he was transferred back to the Daniel Unit on October 1, 2019. Most of Plaintiff's claims focus on the denial of adequate medical treatment and accommodations at the Daniel Unit for Plaintiff's pre-existing physical and mental conditions. But he also raises some claims about brief exposure to unsanitary and cold conditions. And he complains that he witnessed the use of excessive force against other inmates and felt threatened. He asserts that one of the defendants negligently discarded some of his personal property before he was transferred back to the unit. Finally, he complains that his grievances were met with retaliation and were not properly reviewed, and that higher ranking officials failed to properly train or supervise Daniel Unit officers. The Magistrate Judge thoroughly discussed Plaintiff's factual allegations, and the Court will

not repeat them in detail here, except as necessary to discuss Plaintiff's objections to the Magistrate Judge's findings, conclusions, and recommendations.

## 2. The Magistrate Judge's Findings, Conclusions, and Recommendation

The Magistrate Judge used a questionnaire to allow Plaintiff a chance to further develop his claims and to assist in the judicial screening process. *See Watson v. Ault*, 525 F.3d 886, 893–94 (5th Cir. 1976). The Magistrate Judge also received and reviewed authenticated records from TDCJ, including relevant medical records, administrative grievances, and internal reports. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

After this screening, the Magistrate Judge recommended that some of Plaintiff's claims should proceed to the next step in the litigation process, while others should be dismissed for failure to state a claim. Specifically, the Magistrate Judge recommended that Plaintiff's deliberate-indifference claims against Defendants Davis and Williams for their refusal to reassign him to a first-floor cell and against Defendant Bundy for ordering him to climb in spite of his medical restrictions, survive screening and that these defendants be ordered to answer or otherwise plead to the claims. Plaintiff did not object to these claims moving forward in the litigation process.

The Magistrate Judge also recommended that the Court dismiss Plaintiff's claim against Defendant Martinez for loss of property. Plaintiff did not object to the Magistrate Judge's conclusion that Plaintiff's property claim constitutes a state tort allegation rather than any federal or constitutional claim. Plaintiff instead asks the Court to take supplemental jurisdiction over his state-tort claim.

The Magistrate Judge recommended that the Court dismiss the remainder of Plaintiff's claims with prejudice for failure to state a claim. Plaintiff made no objection to the Magistrate Judge's recommendations that the Court dismiss his claims against (1) Defendant Bundy for retaliation, (2) Defendants Cogburn, Castillo, and Perez for failing to properly address his grievances, (3) Defendants Tapscott and Thompson for using force against other inmates, (4) Defendants Castillo, Collier, and Cogburn for failure to train and supervise subordinates, and (5) any defendant in his official capacity, except as it relates to Plaintiff's claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Additionally, Plaintiff did not object to the Magistrate Judge's conclusion that his claims for injunctive and declaratory relief must be denied as moot because of his transfer to a different prison unit. The Court, finding no objection and no plain error, accepts and adopts these recommendations.

But Plaintiff did object to the Magistrate Judge's recommendation that the Court dismiss his other claims. As explained below, the Court finds that Plaintiff's objections to the dismissal of his deliberate-indifference claim against Defendant Durben and his ADA and RA claims should be sustained, in part, but the rest of his objections should be overruled.

### 3. Plaintiff's Objections

Plaintiff filed 30 pages of handwritten objections. (Dkt. No. 25.) He also seeks leave to amend his complaint in response to the Magistrate Judge's recommendation, to add TDCJ and the Texas Tech medical department as defendants for purposes of his ADA and RA claims. (*Id.*) And he asks that the Court take supplemental jurisdiction over his state-law claims. (*Id.*)

### A. Deliberate-Indifference Claims

Plaintiff complains that the defendants were deliberately indifferent to his serious medical needs when they failed to provide adequate medical treatment and when they housed him in violation of his medical restrictions. First, he contends that Defendant Davis acted with deliberate indifference when she refused to prescribe a pelvic brace and medically issued shoes. Then, he claims that Defendants Davis, Williams, and Durben were deliberately indifferent when they housed him on the second floor in violation of his medical restrictions.

#### i. Medical Treatment

Plaintiff acknowledges that he was evaluated by Defendant Davis, a nurse practitioner, soon after his arrival at the Daniel Unit. He already had a knee brace and an ankle brace that he received at a prior unit, but he requested a pelvic brace, medically issued shoes, and reassignment to a first-floor cell. Defendant Davis refused those requests. Plaintiff believes that Defendant Davis should have prescribed him a pelvic brace because a medical provider at a different unit had prescribed him one in the past. And he asserts that the shoes issued by the TDCJ gave him a painful bruise on the bottom of his foot, so he should have been medically issued different shoes. But Plaintiff does not refute that he exhibited a normal gait when Defendant Davis evaluated him and decided that he did not require a pelvic brace. He also admits that she looked at the bruise on his foot before determining that he did not meet the criteria for medically issued shoes. Instead, he was prescribed ibuprofen and informed him that if he wanted different shoes, he could buy them in the commissary.

6

The Magistrate Judge concluded that Plaintiff's claim about Defendant Davis's refusal to prescribe a pelvic brace and medically issued shoes amounts to nothing more than disagreement with medical treatment, which is insufficient to establish deliberate indifference. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In Plaintiff's objections, he acknowledges that Defendant Davis examined and treated him, he just reiterates why he disagreed with her treatment decisions. The Magistrate Judge's conclusion is correct. Plaintiff's objection is overruled.

### ii. Medical Restrictions

Plaintiff also claims that Defendants Davis, Williams, and Durben knowingly violated his medical restrictions when they refused to house him in a first-floor cell. At all relevant times, Plaintiff's medical restrictions included no climbing, no walking on wet or uneven surfaces, no walking more than 100 yards, sedentary work only, and limited standing.[2]

Plaintiff claims that his second-floor housing assignment at the Daniel Unit violated these restrictions because he was forced to go up and down the stairs, walk long distances and on uneven surfaces, and stand for long periods of time in order to go to the chow hall, the showers, the pill window, and the rec yard. He asserts that he risked injury and suffered pain and discomfort climbing the stairs to get to his cell. Plaintiff avers that he repeatedly informed Defendants Davis, Williams, and Durben of his restrictions and the pain caused by his second-floor assignment, but they refused to reassign him to a first-floor cell.

---

[2] The medical records indicate that Plaintiff's restrictions also included ground floor housing only at different times in his incarceration. But this restriction was deleted about a month before Plaintiff was returned to the Daniel Unit. The other restrictions, including no climbing and no walking on uneven surfaces, remained.

7

The Magistrate Judge found that Plaintiff pled enough facts against Defendants Davis and Williams for his second-floor housing claim to survive screening. But the Magistrate Judge found that Plaintiff had failed to plead enough facts to show that Defendant Durben, as a high-ranking officer, knew that his housing assignment violated his medical restrictions and had the authority to reassign Plaintiff to a first-floor cell.

Plaintiff objected to the Magistrate Judge's recommendation that the Court dismiss this claim against Defendant Durben. In his objections, he explains that Defendant Durben, as a Major, had the authority to make housing decisions and that Defendant Durben had "on several occasions moved other inmates (at their request) for different reason's [sic]" including medical reasons. (Dkt. No. 25 at 6.) He also asserts that Defendant Durben was present at least once when Plaintiff met with Defendants Davis and Williams and that he notified all three of them of his medical needs and the risks associated with his second-floor room assignment. (*Id.*)

The Magistrate Judge's conclusions rested on Plaintiff's failure to plead specific factual allegations. Plaintiff responded with additional factual allegations with regard to Defendant Durben, and the Court finds that he has now stated enough that this claim survives screening.

Thus, Plaintiff's objection to the dismissal of Defendant Durben is sustained. The Court finds that Defendants Durben, Davis, and Williams should be required to answer or otherwise respond to Plaintiff's claim that they were deliberately indifferent to his serious medical needs when they refused to reassign him to a first-floor cell in violation of his medical restrictions.

### B. Failure to Protect

Plaintiff also complains that he was assigned to a cell with a cellmate. He asserts that Defendants Durben, Williams, and Carpenter should have placed him in a single cell, or in protective custody, after he reported that he was afraid for his safety because of his status as a sex offender. Plaintiff alleges that he felt threatened, generally, because "[i]t is a known fact, inmates with sexual offenses face a higher substantial risk of serious harm, if housed in general population." (Dkt. No. 25 at 8.) But he does not allege that any inmate specifically threatened him, or that he was ever injured because of his perceived threats.

The Magistrate Judge concluded that Plaintiff did not state a cognizable claim because his general fear did not amount to a substantial risk of serious harm. Thus, Plaintiff failed to show that Defendants were aware of a substantial risk of serious harm or that they ignored that risk.

Plaintiff's objections merely repeat his general perception that his sex offender status placed him at a higher risk and that he was entitled to a single cell as a result. His objection is overruled.

### C. Exposures to unsanitary and cold conditions

Plaintiff alleges that on separate occasions, he was briefly exposed to uncomfortable, unsanitary, or cold conditions. First, on October 23, the toilet in Plaintiff's cell clogged and the cell flooded with toilet water and feces. Plaintiff alleges that Defendants Brown and Doe required him to pick up his property using rags and gloves, and feces soaked through and got on his hands. He was able to wash his hands after he and his cellmate cleaned up the overflow and a plumber arrived to fix the problem. The exposure lasted about an hour and a half.

9

The Magistrate Judge found that this incident, while unpleasant, did not amount to a constitutional violation. *See, e.g., Unger v. Taylor*, No. 6:06-cv-466, 2007 WL 9711406, at *12 (E.D. Tex. Setp. 18, 2007) (noting that "a short term sanitation problem does not amount to a constitutional violation") adopted by 2008 WL 11422152 (E.D. Tex. Feb. 1, 2008), aff'd 368 F. App'x 526 (5th Cir. 2010).

Plaintiff does not refute that the exposure was brief and that he suffered no physical harm as a result. His objections restate that the incident made him uncomfortable, anxious, and nauseated, and that generally raw sewage can be harmful. And he reiterates that he did not cause the overflow and he feels he should not have had to clean it up. Plaintiff also attempts to recharacterize this claim as another violation of his medical restrictions because the clean-up required work that was not sedentary. But his recharacterization fails because he avers only that Daniel Unit authorities generally were aware of his restrictions, and that it should have been obvious that he was limping. Although he asserts that he "made it clear," his factual allegations are insufficient to show that the officers present were subjectively aware of and disregarded a substantial risk to Plaintiff's health or safety. Plaintiff's objections are overruled. The Court accepts and adopts the Magistrate Judge's recommendation that this claim be dismissed.

Plaintiff also complains that he was forced to go outside for two hours in a t-shirt, pants, and shower slides, without a jacket, in 47-degree rainy weather during a cell search on November 21, 2019. The Magistrate Judge concluded, again, that Plaintiff's brief exposure to uncomfortable, but relatively innocuous conditions did not violate the constitution. Plaintiff objects and asserts that his physical ailments worsen in cold conditions. He also points out that the defendants could have permitted him to wear his

TDCJ-issued jacket and shoes to alleviate his discomfort, but they refused to do so. Even so, Plaintiff's allegations of short-term discomfort do not reflect the type of serious conditions that violate the constitution. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (noting that "extreme deprivations are required to make out a conditions-of-confinement claim," and "routine discomfort" will not suffice). Plaintiff's objections are overruled, and the Court will follow the Magistrate Judge's recommendation to dismiss this claim.

### D. Retaliation

The day after Plaintiff's cell flooded with sewage, Plaintiff took his soiled clothes to the laundry exchange. There, Defendant Calloway ordered him to take his clothes out of the laundry bag if he wanted to exchange them for clean clothes. Plaintiff refused, and Defendant Calloway disciplined him for refusing a direct order by placing him in separation for two hours and searching his cell. Plaintiff asserts that Defendant Calloway disciplined him in retaliation for exercising his constitutional rights.

The Magistrate Judge recommended that this claim be dismissed because Plaintiff possesses no constitutional right to disobey an officer's order. Plaintiff objected, claiming that he had an Eighth Amendment right to avoid another exposure to raw sewage. He also contends that because Defendant Calloway's order was conditional—in other words, because Defendant Calloway told him he had to empty his laundry bag "if you want to exchange your clothes,"—he understood that he did not have to comply.

As discussed above, Plaintiff did not have an Eighth Amendment right to avoid briefly touching soiled clothes. And as discussed by the Magistrate Judge, he did not have the right to disobey a direct order. Thus, as discussed by the Magistrate Judge, he has failed

11

to establish the first element of a retaliation claim. His objections are overruled, and the Court accepts the Magistrate Judge's recommendation to dismiss this claim.

E. **Due Process Claims**

Plaintiff also complains that Defendant Calloway violated his due process rights when she placed him in disciplinary segregation for two hours without a hearing or written report. The Magistrate Judge thoroughly analyzed this claim and found that it failed to meet either the procedural or substantive due process standards. Plaintiff's objections do not alter the analysis. As a result, Plaintiff's objections are overruled. The Court will follow the Magistrate Judge's recommendation and dismiss Plaintiff's due process claims against Defendant Calloway.

F. **ADA and RA**

In addition to his Section 1983 claims, Plaintiff alleges that the defendants violated his rights under the ADA and RA by denying him—on the basis of his disabilities—benefits of the programs and activities afforded non-disabled TDCJ prisoners. (*See* Dkt. No. 2 at 8–9.) The Magistrate Judge concluded that Plaintiff's ADA and RA claims should be dismissed for failure to state a claim because (1) Plaintiff merely repled his denial of medical care claim, which is insufficient; (2) Plaintiff failed to plead specific facts establishing how his claimed impairments limit the performance of major life activities; and (3) he has not pleaded facts sufficiently alleging that denial of any benefits was by reason of his disability. (*See* Dkt. No. 21 at 36–38.)

Plaintiff objected to the Magistrate Judge's conclusions and attempted to clarify his allegations to bring them under the ADA and RA. In his objections, Plaintiff again restates his claims for denial of medical care and seems to conflate the deliberate-indifference

standard with the elements of the ADA and RA. And, as the Magistrate Judge pointed out, "[a] claim is not proper under the ADA [or RA] if it is simply a restatement of a claim for denial of medical care." (Dkt. No. 21 at 36) (quoting *Hale v. Abangan*, No. 3:15-cv-170, 2018 WL 1053520, at *3 (S.D. Miss. Jan. 26. 2018). But then Plaintiff provides additional facts and explains how his physical impairments limited his daily activities and made it more difficult to access—or gave him less meaningful access to—the benefits of TDCJ's services. *Cf. Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012).

Specifically, Plaintiff reiterates his physical ailments and the medical restrictions that prior medical providers had placed on his record. He asserts that the physical deformity in his lower body significantly limits his ability to climb, stand for extended periods, walk distances over 100 yards, or walk on uneven or wet surfaces. And he asserts that because of his disabilities, his housing assignment on the second floor made it more difficult to access services like the chow hall, medication window, and commissary. He claims these services were all in another building, which required him to walk down the stairs, through the recreation yard, and well over 100 yards, often to end up standing in long lines.

Additionally, in Plaintiff's "Memorandum of Laws," submitted with his original complaint, Plaintiff describes "every day in order to go to chow or pill window for medication, I must step out of my cell and wait in the dayroom for 1–2 hours; leaving me only two options, sit on a hard metal bench, or stand for 2 hours, either way it causes a deadness feeling in my inter-thigh area, and hip; and pain in my back and leg, before even going to chow or pill window. Then the long walk there on uneven cracked sidewalk, that has sections missing, then the long waiting in line for medication [all sic]." (Dkt. No. 2 at 8.) And he also explains that "[b]ecause of the conditions it takes to get to the chow hall, or

13

anywhere else, (long waiting outside of my cell, long walk to-and-from such places, another long wait to get back in my cell, and sometimes it's raining) if I am feeling pain, I stay in my cell, to prevent worsening the condition [all sic]." (*Id.* at 10.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA prohibits discrimination by public entities, while the similarly worded Rehabilitation Act (RA) applies to federally-funded programs and activities. 29 U.S.C. § 794(a). The same definitions and legal standards apply to both Acts, and the same remedies are available under both Acts. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

To state a claim under the ADA and RA, a plaintiff must show that (1) he has a qualifying disability, (2) he is being denied the benefits of services, programs, or activities or otherwise being discriminated against by a public entity, and (3) he is being discriminated against because of his disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). A qualifying disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(a)(1). The ADA places an "affirmative obligation" on the State "to make reasonable accommodations" for persons with disabilities in the provision of public services. *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020).

The ADA protects people incarcerated in state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998); *Hale v. King*, 642 F.3d 492 (5th Cir. 2011). In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the "effect of discriminating against that prisoner because the lack of accommodation

may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Tex. Dep't of Criminal Justice*, C.A. No C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) (citing *United States v. Georgia*, 546 U.S. 151, 160 (2006) (explaining that a plaintiff's allegations, if true, that defendant refused to provide reasonable accommodations to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled prisoner suffering serious punishment "without penal justification" and supported a claim under the ADA)). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Douthit v. Collier*, No. 20-20550, 2022 WL 5240152, at *2 (5th Cir. Oct. 5, 2022) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). And intentional discrimination is required in order to recover compensatory damages under the ADA. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

Plaintiff's allegations—including the additional facts pled in his objections to the Magistrate Judge's report—are sufficient to avoid dismissal of his ADA and RA claims at this stage. Specifically, the Court finds that Plaintiff has pled facts that, if true, show that his physical condition substantially limits his ability to stand, walk, and bend. He also claims—and the authenticated records confirm—that TDCJ was aware of these limitations since at least 2017 when his medical restrictions were placed in his record. And he pled facts that, if true, show that TDCJ failed to accommodate his disabilities when it placed him in a second-floor cell, limiting his access to services like the chow hall, pill window, commissary, and rec yard.

Plaintiff also alleges that he suffered from mental disabilities, including PTSD, paranoia, and anxiety, which he claims substantially limited his ability to sleep, think, and communicate. He alleges that TDCJ failed to reasonably accommodate these disabilities when it refused to house him in a single cell. He further claims that in November 2019, while he was housed in the Daniel Unit, a licensed psychiatrist evaluated him in a telehealth visit and found that based on his mental disabilities, he should be restricted to a single cell. Plaintiff contends that the psychiatrist put in a request to have Plaintiff transferred to a unit with single cells. But Plaintiff says that Defendant Carpenter interfered with the psychiatrist's recommendation and refused the housing request. Plaintiff claims that as a result, he suffered panic attacks and sleep deprivation.

Again, the Court finds that Plaintiff has alleged sufficient facts at this stage to state a claim under the ADA and RA. *See Epley v. Gonzalez*, 860 F. App'x 310, 312–314 (5th Cir. 2021) (explaining that "[w]hether a plaintiff is disabled under the ADA is not a demanding question, and "the applicable regulations make clear that PTSD will, in *most* cases, sufficiently limit a major life activity"). Moreover, the Fifth Circuit explained that the denial of appropriate housing accommodations when a prison knows of an inmate's mental disabilities could violate the ADA and RA. *Id.* "An ADA claim may be based on the denial of reasonable housing accommodations" even if the accommodations do not "treat the underlying medical conditions that require their existence." *Schorsch v. Miller*, No. 2:19-CV-323, 2021 WL 4129566, at *4 (S.D. Tex. Sept. 10, 2021) (quoting *Epley*, 860 F. App'x at 315).

Plaintiff also seeks permission to add several defendants to his complaint for purposes of his ADA and RA claims, including TDCJ, the Texas Tech Medical

Department, and Defendants Davis, Durben, Carpenter, and Williams. But although the ADA authorizes claims against a "public entity," it does not authorize individual liability. *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (citing *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999)). As a result, the Court finds that TDCJ is the only proper defendant on these claims.[3]

Based on Plaintiff's allegations, clarified through his objections, the Court finds that he has pled enough facts to avoid dismissal at the screening stage. Thus, Plaintiff's objections are sustained, and the Court finds that Defendant TDCJ should be required to answer or otherwise respond to Plaintiff's ADA and RA claims based on TDCJ's denial of reasonable housing accommodations.

### G. Supplemental Jurisdiction

As discussed above, Plaintiff did not object to the Magistrate Judge's finding that his claim against Defendant Martinez for disposal of his personal property constitutes a state-tort claim rather than a federal one. Instead, he asked that the Court take supplemental jurisdiction over this claim under 28 U.S.C. § 1367. But Plaintiff's property claim does not share any common issue of fact or law with the federal claims that are proceeding in this Court. Thus, it is not "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. And as

---

[3] Plaintiff's claims against the Texas Tech Medical Department are conclusory, at best. While he asserts that it is responsible, he provides no factual allegations to support his conclusion or from which the Court may infer involvement. Moreover, he does not assert that the Texas Tech Medical Department possessed the authority to make housing decisions for inmates within the TDCJ. Indeed, Plaintiff alleges that at least one medical provider recommended a housing reassignment for him based on his disabilities to no avail.

explained by the Magistrate Judge, Plaintiff has an adequate remedy under state law for this claim.

As a result, the Court concludes that Plaintiff has failed to state a federal claim, and the Court lacks jurisdiction over Plaintiff's state-tort claim. This claim must be dismissed.

## 5. Conclusion

Except as noted above, Plaintiff's objections are overruled, and the Court accepts and adopts in part the findings, conclusions, and recommendation of the Magistrate Judge. As a result, the Court orders:

(1) Plaintiff's request to amend to add Defendant TDCJ for purposes of his ADA and RA claims is granted. The Clerk is directed to add TDCJ as a defendant on the docket of this case.

(2) The Court will enter a separate order directing service and requiring a response on the following claims:

- (a) Plaintiff's deliberate-indifference claims against Defendants Davis, Williams, and Durben for refusing to reassign Plaintiff to a first-floor cell in violation of his medical restrictions,
- (b) Plaintiff's deliberate-indifference claims against Defendant Bundy for requiring him to climb in violation of his medical restrictions, and
- (c) Plaintiff's ADA and RA claims against Defendant TDCJ for failing to offer reasonable housing accommodations for Plaintiff's disabilities.

(3) All other claims and Defendants are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

(4) There is no just reason for delay in entering a final judgment and final judgment should be entered as to the above-described Defendants and claims pursuant to Federal Rule of Civil Procedure 54(b).

(5) All relief not expressly granted is denied and any pending motions are denied.

The Court will enter judgment accordingly.

Dated November 14, 2022.

                                                JAMES WESLEY HENDRIX
                                                United States District Judge