UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

PATRICIO ESTRADA,

                 Plaintiff,

v.                                                                                    No. 5:20-CV-00030-H

IRENE BUNDY, *et al.*,

                 Defendants.

## OPINION AND ORDER

Defendants Irene Bundy, Julia Durden, Cynthia Williams, and Texas Department of Criminal Justice (TDCJ) filed a motion for summary judgment with a brief and an appendix in support. Dkt. Nos. 80, 81. Defendants assert that they are entitled to summary judgment because the competent summary judgment evidence shows no violation of Plaintiff's rights under the Eighth Amendment, the Americans with Disabilities Act (ADA), or the Rehabilitation Act (RA). Plaintiff did not respond. After considering the applicable law, the parties' arguments, and the relevant summary judgment evidence, the Court grants the defendants' motion for summary judgment.

## 1. Background

Plaintiff Patricio Estrada, a self-represented former prisoner proceeding *in forma pauperis*, filed this civil-rights lawsuit under 42 U.S.C. § 1983 against several employees and officers of the TDCJ, complaining of events that occurred during his confinement in the Daniel Unit. Many of his claims were dismissed pursuant to judicial screening under 28 U.S.C. §§ 1915(e) & 1915A. *See* Dkt. No. 30.

Plaintiff's remaining claims focus on the denial of reasonable accommodations for his pre-existing physical and mental conditions. He claims that Defendants Williams and Durden housed him on the second floor, and Defendant Bundy required him to climb in violation of his medical restrictions. He also contends that TDCJ's denial of reasonable housing accommodations violated his rights under the ADA and RA. He seeks monetary relief.

**2.     Defendants' Motion**

Defendants argue that, in light of their competent summary judgment evidence, there are no genuine issues of material fact remaining to necessitate trial and they are entitled to judgment in their favor. In support of their motion, Defendants submit relevant portions of Plaintiff's TDCJ grievance records and medical records, as well as relevant excerpts from the TDCJ Offender Orientation Handbook. Dkt. No. 81.

First, they assert that Plaintiff failed to properly exhaust his administrative remedies with respect to any of his remaining claims. Specifically, they assert that he filed a Step-1 grievance about the incident with Defendant Bundy, but after he received a response, he never filed a Step-2 grievance. And Defendants contend that Plaintiff never filed any grievances about the remaining live claims. Finally, Defendants assert that Plaintiff is not excused from the exhaustion requirement because the grievance system was available to Plaintiff, he was aware of it, and he used it to grieve other matters during the same time frame.

Next, Defendants argue that Plaintiff's TDCJ medical records contradict his ADA and RA claims with respect to his housing assignment. Likewise, they assert that the summary judgment evidence belies Plaintiff's deliberate-indifference claims against

2

Defendants Bundy, Williams, and Durden.  They point to the records to show that Plaintiff's documented mental and physical condition was far different than he describes in his pleadings.  And they rely on the records to show that although he had a ground floor housing restriction in the past, it was removed by his medical provider after a full assessment and review, and well before the involvement of the defendants in this case. Moreover, they contend that Plaintiff improperly conflates his work restrictions with living restrictions.  They point to the records to show that they maintained compliance with all of Plaintiff's active work restrictions—but that he was not prohibited from or unable to perform routine day-to-day physical activities such as walking upstairs or to and from medical and dining facilities.

Then, Defendants Bundy, Durden, and Williams assert that they are entitled to qualified immunity because their actions did not violate Plaintiff's clearly established Eighth Amendment rights and because they reasonably relied on the expertise of Plaintiff's medical providers.

Finally, Defendants contend that Plaintiff may not recover the money damages he seeks.  They argue that he is not entitled to monetary relief under the ADA and RA because he cannot show intentional discrimination in light of the summary judgment evidence. Moreover, they assert that he has not met the physical-injury threshold to be eligible for compensatory damages under the PLRA.

In sum, Defendants seek summary judgment because Plaintiff failed to exhaust his administrative remedies, his claims fail on the merits, he has not overcome their individual assertions of qualified immunity, and he cannot recover the damages he seeks.

3.    **Legal Standards**

A.    **Summary Judgment**

Summary judgment is appropriate on a claim or defense where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of pointing out to the Court that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. *Id.* at 324; *see also* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 597 (1986). In *Mississippi Prot. & Advocacy Sys., Inc. v. Cotten*, the Fifth Circuit explained that "[w]here the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial." 929 F.2d 1054, 1058 (5th Cir. 1991). Summary judgment "may not be thwarted by conclusional

allegations, unsupported assertions, or presentation of only a scintilla of evidence."
*Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597; *see also Mississippi Prot. & Advocacy Sys.*, 929 F.2d at 1058.

Nevertheless, a motion for summary judgment for failure to exhaust is treated slightly differently. *See, e.g., Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). "Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert that plaintiffs have not invoked the proper forum for resolving a dispute." *Id.* at 272 (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)). Stated differently, exhaustion of administrative remedies is a "rule of judicial administration" that is akin to doctrines like 'abstention, finality, and ripeness . . . that govern the timing of federal court decision making.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (other citation omitted)). Since exhaustion of administrative remedies is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* (citation and footnote omitted).

## B.    Exhaustion

42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995 (PLRA), provides that a prisoner must exhaust prison-grievance remedies before he can

pursue a civil-rights claim under 42 U.S.C. § 1983. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Even where an inmate seeks monetary damages, which may not be available through prison-grievance proceedings, exhaustion is a prerequisite to filing suit. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

TDCJ grievance procedures require that inmates complete a two-step grievance process before their claim is considered exhausted. *Rosa v. Littles*, 336 F. App'x 424, 428 (5th Cir. 2009); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Inmates must first file a Step-1 grievance within fifteen days of the alleged incident. *Rosa*, 336 F. App'x at 428. They may then appeal an adverse Step-1 grievance decision by filing a Step-2 grievance. *Id.* Both steps of the administrative grievance process must be properly completed to fully exhaust TDCJ's administrative remedies. *See Johnson*, 385 F.3d at 515; *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2004). The Fifth Circuit takes a "strict approach" to the exhaustion requirement, *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), and even substantial compliance with the prison grievance process will not suffice. *See Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion....").

When a prisoner fails to exhaust his administrative remedies without any valid excuse, the court may dismiss the action without prejudice as to its refiling once the prisoner complies with the exhaustion requirement. *Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir.

6

1998), *overruled by implication on other grounds by Jones v. Bock,* 549 U.S. 199 (2007).  But when a prisoner can no longer comply with the exhaustion requirement because the deadline for completing the administrative remedy has passed, the court may dismiss the suit with prejudice.  *See Johnson v. La. ex rel. La. Dep't of Pub. Safety & Corr.,* 468 F.3d 278, 280–81 (5th Cir. 2006) (per curiam).  Courts are not "to inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" rather, "prisoner[s] must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah Cty., Miss.,* 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (citing *Booth*, 532 U.S. at 740 n.5; *Wright*, 260 F.3d at 358) (internal quotation marks omitted).

Courts "must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'" *Johnson*, 385 F.3d at 516 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).  Consequently, "a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* at 517.

The Supreme Court has cautioned that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007).  Rather, "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Johnson*, 385 F.3d at 522.  A prisoner who describes unsanitary or otherwise unconstitutional conditions may "adequately alert administrators to the problem whether or not the grievance names anyone." *Id.* at 517.  But a prisoner who alleges that an officer acted improperly "would ordinarily be expected to provide details" such as "who was

7

involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Id.*

Finally, because failure to exhaust is an affirmative defense under the PLRA, Defendants have the burden of demonstrating that Plaintiff failed to exhaust his administrative remedies. *See Jones,* 549 U.S. at 216. Accordingly, "[a]t the summary-judgment stage, this means that the defendant[ ] 'must establish beyond peradventure all the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Wilson,* 776 F.3d at 299 (quoting *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010)).

### C.    ADA and RA Claims

In a reasonable accommodation case like this one, the ADA and RA are virtually indistinguishable. *See Pinkerton v. Spellings*, 529 F.3d 513, 516, 519 (5th Cir. 2008). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, . . . or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

To state a claim under the ADA, a plaintiff must show that (1) he has a qualifying disability, (2) he is being denied the benefits of services, programs, or activities or otherwise being discriminated against by a public entity, and (3) he is being discriminated against because of his disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

### i.    Qualifying disability

Under the ADA, an individual has a disability if he has a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C.

8

§ 12102(1)(A); *see also* 29 U.S.C. § 705(9)(B). The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. 29 C.F.R. § 1630.2. But Congress has made it clear that "that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[] and . . . that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). Courts are commanded to construe disability broadly, "to the maximum extent permitted by the terms of [the Act]." 42 U.S.C. § 12102(4)(A); *Williams v. Tarrant Cty. Coll. Dist.*, 717 Fed. App'x 440, 447 (5th Cir. 2018), *reh'g denied* (Feb. 20, 2018). This consideration may include factors such as the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; or the way an impairment affects the operation of a major bodily function. 29 C.F.R. § 1630.2.

### ii.    Discrimination and Causation

A plaintiff may satisfy the second and third prongs of the ADA analysis by establishing that a public entity failed to provide reasonable accommodations for his disability. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). "A plaintiff proves a failure to accommodate by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations." *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021). The plaintiff has the burden "to identify the disability, the limitation, and to request an accommodation in 'direct and specific' terms." *Id.* An accommodation is reasonable if it provides "meaningful access to the benefit." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). An inmate is not entitled to an

9

accommodation that is ideal; he is entitled only to an accommodation that is reasonable and effective.  *See Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012); *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009).  Further, courts afford deference to a correctional facility's determination of an appropriate accommodation.  *Arce v. Louisiana*, 226 F. Supp. 3d 643, 651 (E.D. La. 2016) (citing *Wells*, 460 F. App'x at 313).

Finally, "[a] plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination." *Delano–Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002); *see also Windham v. Harris Cnty.*, Tex., 875 F.3d 229, 235 n.5 (5th Cir. 2017).

### D.    Qualified Immunity

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).  "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 23, 236 (5th Cir. 2008)).

But even if a defendant can be shown to have violated another's constitutional rights, the defendant may not be liable under Section 1983.  Defendants who perform discretionary duties—such as police officers and jailers—may invoke the affirmative defense of qualified immunity in response to a plaintiff's Section 1983 suit.  Qualified immunity applies "when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276–80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be sure that, if the facts alleged by plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3 721, 730–31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3 417, 421–22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. The Supreme Court explained long ago that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341–43 (1986)). And "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir. 1985).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and modifications omitted). "There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). In the typical case, the plaintiff "identif[ies] a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and citations omitted). This approach "do[es] not require a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In rare cases, however, "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *cf. Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution.").

The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks and citation omitted). Likewise, the Supreme Court has stated that the purpose of the doctrine is to "give[ ] government officials breathing room to make reasonable but mistaken judgments." *Stanton v. Sims*, 571 U.S. 3, 6 (2013). "Accordingly, 'qualified immunity represents the norm,' and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). When a defendant invokes qualified

immunity in his answer, the burden shifts to the plaintiff to show that the defense is unavailable. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

Defeating an invocation of qualified immunity requires that the plaintiff "point to summary judgment evidence (1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was clearly established at the time." *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (internal quotation marks omitted). So, while the "plaintiff's factual assertions are taken as true to determine whether they are legally sufficient to defeat the defendant's motion for summary judgment," *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020), the plaintiff bears a heavy burden in overcoming a defendant's good-faith invocation of qualified immunity. *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *Pauly*, 580 U.S. at 79. That is, the clearly established law on which a plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.* at 79–80. Thus, failure to identify a case in which an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

## 4.    Discussion

### A.    Plaintiff failed to properly exhaust his administrative remedies

Plaintiff did not respond to Defendants' motion for summary judgment. But he did swear under penalty of perjury to the allegations in his complaint, Dkt. No. 1, and in his

responses to the Court's questionnaire, Dkt. No. 20. Thus, the Court considers the pleadings as competent summary judgment evidence. Even so, the Court finds that no genuine issues of material fact remain as to his failure to exhaust the administrative remedies available to him, and Defendants are entitled to summary judgment.

Defendants argue that Plaintiff's complaint must be dismissed because he failed to exhaust the TDCJ administrative remedies available to him prior to filing this lawsuit. The summary judgment evidence demonstrates that Plaintiff did not file a Step-1 or a Step-2 grievance about his housing assignment or medical restrictions, nor did he grieve any claims of discrimination or failure to reasonably accommodate his disabilities. *See* Dkt. No. 81. He did not file any grievances about any relevant interactions with Defendants Williams or Durden. He filed a Step-1 grievance about Defendant Bundy's requiring him to climb onto a toilet to remove a blanket that was hung over the light and blocking the door, but it was denied. He did not file a Step-2 grievance about the incident.

Plaintiff alleges generally that he "presented facts relating to medical complaints," but he does not specify the procedures he used. *See* Dkt. No. 1 at 10. And although he vaguely asserts that he filed some grievances, and that he even appealed one denial, he also claims that he could not "notify the Defendants" of his claims for fear of retaliation. But his grievance records show that he threatened to file a lawsuit if his claims against Defendant Bundy were denied. Nothing in Plaintiff's pleadings or the summary judgment evidence substantiates Plaintiff's claimed fear of retaliation. To the contrary, the records suggest that Plaintiff intended to skip over the administrative process and pursue his claims in federal court, instead.

14

In short, the summary judgment evidence offered by Defendants shows that the grievance procedure was available to Plaintiff and that he used it to address other matters during the same time frame.  However, the records also show that he did not complete the grievance process against Defendant Bundy, and he did not even initiate the grievance process to address his ADA, RA, and remaining deliberate-indifference claims.  In short, Plaintiff has failed to identify any evidence to create a genuine dispute over whether he properly exhausted his administrative remedies with respect to his remaining claims.

The Court finds that Defendants have shown beyond peradventure that Plaintiff failed to exhaust his administrative remedies as required by the PLRA.  Thus, they are entitled to summary judgment.

**B.    Plaintiff's claims otherwise fail in light of the unrefuted summary judgment evidence.**

Alternatively, as thoroughly briefed by the defendants and in light of the summary judgment evidence, Plaintiff has not shown that the defendants violated his rights under the ADA and RA or that Defendants Bundy, Durden, and Williams were deliberately indifferent to his health and safety.

The medical records provided by the defendants show that Plaintiff's mental and physical condition was assessed by medical providers when he returned to the Daniels Unit, and his restrictions were modified appropriately.  Plaintiff does not dispute that the defendants complied with his work restrictions.  Nor does he dispute that his ground-floor housing restriction was removed by a medical provider before he was re-assigned to a second-floor cell.  Importantly, the medical records show that Plaintiff exaggerated his mental-health diagnoses and physical condition.  But the defendants reasonably relied on the assessment of medical professionals and the documentation of his actual diagnoses and

15

observed physical condition when making his housing assignment and when giving him routine orders to maintain security.

In light of the summary judgment evidence, which Plaintiff has not refuted, Plaintiff cannot show that the defendants intentionally discriminated against him. So he is not entitled to relief on his ADA claim. Nor has he demonstrated that the defendants "underst[ood] the limitations [he] experienced as a result of his disability." *Valentine*, 993 F.3d at 290. Similarly, in light of the undisputed summary judgment evidence, Plaintiff has not shown that the defendants acted with deliberate indifference—that they were subjectively aware of, but disregarded, a substantial risk of serious bodily harm. *See Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). Thus, Plaintiff has failed to overcome the individual defendants' assertion of qualified immunity on his deliberate-indifference claims. Simply put, no genuinely disputed material fact remains to require a trial on Plaintiff's claims.

5.    **Conclusion**

For the reasons discussed above and those provided in the defendants' brief—and after reviewing the pleadings and the competent summary judgment evidence—the Court grants Defendants' motion for summary judgment. Thus, Plaintiff's complaint and all remaining claims are dismissed with prejudice. The Court will enter judgment accordingly.

Dated July 31, 2025.

James Wesley Hendrix
United States District Judge

16